## UNITED STATES v. MARTIN.
### No. 6301.

Circuit Court of Appeals, Fifth Circuit.
Dec. 19, 1931.

Norman A. Dodge, U. S. Atty., and Alex M. Mood, Asst. U. S. Atty., both of Fort Worth, Tex., and Eric Eades, Regional Atty., Veterans' Administration, of Dallas, Tex., for the United States.

Talma L. Smith, of Washington, D. C., and W. S. Birge, of Amarillo, Tex., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Martin, suing upon a war risk insurance policy, obtained a verdict finding that on October 23, 1918, he became totally and permanently disabled. From the judgment entered on this verdict the United States appeals, assigning as error the refusal of its request for an instructed verdict. Appellant insists here that the evidence of plaintiff and his witnesses, viewed in the light most favorable to plaintiff's cause, does not permit of the conclusion that he was totally disabled.

We agree fully with appellee that under the settled law applicable to contracts of this kind it is ordinarily for the jury to say, under appropriate instructions, whether total permanent disability exists, and that where there is any substantial evidence on which a verdict can rest it must be upheld. We agree with appellee also that the term "total disability" when used in a policy contract is entitled to receive, and that with practical uniformity it has received, a liberal construction to effectuate the intent of the insurance to provide support and maintenance for the insured in lieu of that which, through his inability to support himself, he has lost, and this not because the definition of "total disability," T. D. R. 20, March 9, 1918, "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any gainful occupation," adds anything to the statutory terms, or because

the terms should be given other than their proper meaning to effectuate the supposed benevolent purpose of Congress in authorizing these contracts. As to the definition, we do not think that when properly construed, it adds anything to the policy terms. Whether that definition, or the one appearing in the 1925 Veterans' Bureau Schedule of Disability Ratings, with the word "continuously" transposed to modify "renders," is used, the result of a reasonable construction should be the same. United States v. Ross (C. C. A.) 49 F.(2d) 541, 542. As to the influence of the supposed benevolent purpose of Congress in producing liberality of construction for these war risk contracts, apart from the consideration that courts sit to interpret the law and not to administer benevolence (U. S. v. LeDuc (C. C. A.) 48 F.(2d) 789; U. S. v. McPhee (C. C. A.) 31 F.(2d) 243, 245), a comparison of decisions construing war risk with those construing private disability policies will show very little, if any, difference in liberality of view. It will show that both are construed to reasonably and fully give effect to the purpose of the insurance to provide support to the extent of the policy payments, for those who are prevented by the disability insured against, from earning it for themselves. Cases so construing private insurance contracts are: Taylor v. So. States Life Ins. Co., 106 S. C. 356, 91 S. E. 326, L. R. A. 1917C, 910; United States Casualty Co. v. Perryman, 203 Ala. 212, 82 So. 462, 463; Young v. Travelers' Ins. Co., 80 Me. 244, 13 A. 896; Metropolitan Cas. Co. v. Cato, 113 Miss. 283, 74 So. 114, 115; Fidelity & Cas. Co. v. Bynum, 221 Ky. 450, 298 S. W. 1080, 1081; Hefner v. Fidelity & Cas. Co. of N. Y. (Tex. Civ. App.) 160 S. W. 330; Holcomb v. Grand Lodge Brotherhood of Railroad Trainmen, 171 Ky. 843, 188 S. W. 885, L. R. A. 1917B, 107, and note. Cases so construing War Risk Insurance contracts are: United States v. Lawson (9 C. C. A.) 50 F.(2d) 646; Ford v. United States (1 C. C. A.) 44 F.(2d) 754; United States v. Burke (C. C. A.) 50 F.(2d) 653; Sorvik v. United States (9 C. C. A.) 52 F.(2d) 406; United States v. Godfrey (1 C. C. A.) 47 F. (2d) 126; Carter v. United States (4 C. C. A.) 49 F.(2d) 221; United States v. Phillips (8 C. C. A.) 44 F.(2d) 689; United States v. Cox (5 C. C. A.) 24 F.(2d) 944; United States v. Acker (5 C. C. A.) 35 F.(2d) 646; Malavski v. United States (7 C. C. A.) 43 F.(2d) 974; United States v. Sligh (C. C. A.) 31 F.(2d) 735.

These decisions all give to the terms the practical common-sense meaning that one is totally disabled when he is not, without injury to his health, able to make his living by working. They reject the idea that it is necessary to prove absolute inability to do any kind of work; they establish that proof that the insured has been able to do some work while evidence on the point is not of itself disproof of disability.

We arrive then easily, and without straining at construction, at the view that Martin was totally and permanently disabled within the meaning of the policy in suit, if he has been unable, without injury to his health, to make his living by working. It remains only to consider whether Martin has made out such a case. We do not think he has. The evidence establishes that he married soon after coming out of the army and that he has, since his discharge, worked without substantial intermission, at some kind of gainful occupation, principally contracting and real estate, and that from his work he has made a fair living for his wife and children. Of course, it must be conceded that though having great probative effect it is not conclusive against him that he has earned money, or that he has been, with substantial continuity, at work. There are cases which rightly hold that notwithstanding one has worked continuously for long periods of time he might yet be found to be totally disabled if he has done the work upon sheer resolution, and at the risk or certainty of impairing his health or shortening his life. Typical of these are cases of tuberculars, of which the Lawson, Sligh, and Phillips Cases are representative; Godfrey's Case (C. C. A.) 47 F.(2d) 126, being an extreme one of the type, where after discharge in 1919 claimant worked with substantial continuity until February 1927, when he died, and earned during that time $35 or $40 a week. The court put the recovery there upon the ground that though he did work, the jury had a right to find he was not able to work, and that it was his working when he was totally disabled which shortened his life and brought about his death. If Martin had shown either that he had worked though he was really not able to work, or that though able to work he had worked at the sacrifice of his health, we should not have felt warranted in disturbing the jury's verdict. His evidence established quite the contrary. It does indeed show that he received a serious wound under circumstances highly creditable to him, and that he has a marked disability. That this quite seriously, in fact almost totally, disabled him in 1918 when he received it, but that the disability rapidly lessened and from the time of his discharge, with slight inter-

mission, he has gone about his work earning a living as a real estate operator, building contractor, and a trader in lands and leases. At no time before 1928 had he ever thought himself, or claimed to be, totally disabled. Contrary to the claim of the suit that he became totally disabled in 1918 maturing his policies, he has kept them in force except for a temporary lapse after which they were renewed upon his assurance that he was not disabled, paying all premiums on them. His own evidence and that of his witnesses is that while the strength of his leg is impaired, and it is not as serviceable as the uninjured one, he could and did get about with the aid of a cane and by the use of an automobile sufficiently to carry on his business; that he can walk without a cane; and that in fact he does get about now mostly without a cane. He testified that though for a while after the injury the wound on his thigh would suppurate and burst, that it has not done so for a long time and that he has not consulted a doctor on account of it for five years. That while his heel, which received a secondary injury while the leg was in the course of treatment, does cause him pain and inconvenience, he can have and has had shoes made which enable him to get about, sometimes it is true with pain, but for long periods without any pain whatever. The medical testimony, his own, and that of the government, was to the effect that his leg has permanently healed with a good union, and that while it will not get any better, it will not get any worse, and that the use of it will not injure it in any way except to cause fatigue, from which he will recover by rest just as from any other fatigue. That the callous spot on his heel will with proper treatment improve, and in time disappear altogether, and that no injury to his general health from his leg has come or will come to him from the use of it.

From these facts, which are furnished by himself and his witnesses, it appears that the sum and substance of his case is that he received a wound while acting as messenger on the battle front. It has caused him suffering and disability and has to some extent handicapped him in business; it has not at all prevented him from following occupations by which he has earned his livelihood. That the government should liberally recognize wounds so received no one can doubt, and that plaintiff should receive compensation goes without saying. These matters, however, are for consideration by Congress and the agencies employed by it to administer its bounty. The trial judge in submitting the issue and the jury in rendering the verdict undoubtedly felt, as we do, the strongest compulsion toward giving recognition to the admirable conduct of this man, whose testimony was given with engaging honesty and candor, in sustaining his obligations as a soldier and a citizen. These considerations, abstractly worthy as they are, may not have the effect in a suit on a contract of giving to plain and undisputed evidence a significance contrary to its reasonable meaning. Austin v. Neiman (Tex. Com. App.) 14 S.W.(2d) 794; Samulski v. Menasha Paper Co., 147 Wis. 285, 133 N. W. 142, 145; United States v. Barker (C. C. A.) 36 F.(2d) 556; United States v. Le-Duc (C. C. A.) 48 F.(2d) 789; Freeman v. United States (D. C.) 48 F.(2d) 233; Nicolay v. United States (C. C. A.) 51 F.(2d) 170; United State v. Rice (C. C. A.) 47 F.(2d) 749; United States v. McPhee (C. C. A.) 31 F.(2d) 243; United States v. Ross (C. C. A.) 49 F.(2d) 541, 542.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.