### UNITED STATES v. PERRY.
#### No. 9256.

Circuit Court of Appeals, Eighth Circuit.
Jan. 18, 1932.

J. A. Tellier, Sp. Asst. to U. S. Atty., of Little Rock, Ark., and Thomas E. Walsh, Atty., U. S. Veterans' Administration, of Washington, D. C. (Wallace Townsend, U. S. Atty., of Little Rock, Ark. and Murray L. Crosse, Atty., U. S. Veterans' Administration, of Seattle, Wash., on the brief), for the United States.

Walter A. Isgrig, of Little Rock, Ark., for appellee.

Before KENYON, VAN VALKEN-BURGH, and GARDNER, Circuit Judges.

KENYON, Circuit Judge.

This is an appeal from a judgment on a war risk insurance policy. The case was tried by the court upon the theory that a jury had been waived under Rev. St. § 649, as amended by Act of May 29, 1930, c. 357 (28 USCA § 773), which provides, not only for a written waiver of a jury in civil cases, but also for an oral waiver, the stipulation therefor to be made in open court and entered in the record. Counsel for appellee in his brief claims that the record here fails to show affirmatively that a jury was waived either by oral or written stipulation, and therefore, as no questions are raised as to the pleadings, process, or judgment, there is nothing before this court for determination. This point is not well taken. In its judgment entry the trial court recites that a jury had been waived by both parties. Counsel for appellee in his argument before this court admitted that a jury had been waived by oral stipulation. True, the record does not show in terms the agreement made, but the statement of the court in its judgment entry is sufficient to show the fact. Shields v. Mongollon Exploration Co. et al. (C. C. A.) 137 F. 539; T. H. Flood & Co. v. Bates (C. C. A.) 283 F. 364.

When an action at law is tried by the court, the jury having been waived under the provisions of the statute either orally or in writing, the appellate court will not review the judgment for an error of fact such as a finding contrary to the weight of the evidence. The findings of the court, whether general or special, have the same effect as the verdict of a jury. As motion was here made by appellant for judgment and proper requests also made for conclusions of law, this court will inquire whether there is substantial evidence to sustain the findings. Akre et al. v. Liberty State Bank of Minneapolis (C. C. A.) 24 F.(2d) 816; Federal Intermediate Credit Bank of Omaha v. L'Herisson (C. C. A.) 33 F.(2d) 841; Blair v. United States (C. C.

A.) 47 F.(2d) 109; White v. United States (C. C. A.) 48 F.(2d) 178.

Some minor questions are raised as to the admission of certain evidence. They are relatively unimportant. The real question before us is the one of substantial evidence to sustain the findings and conclusions of the trial court. Insured entered the United States Army on May 27, 1918, and was discharged therefrom on January 13, 1919. His insurance policy was kept in force and effect by the payment of premiums up to February 1, 1919, after which no premiums were paid. The law extended the policy to March 2, 1919. The trial court, in order to render judgment, was compelled to find that insured was totally and permanently disabled prior to March 2, 1919.

■■ The courts have quite generally adopted substantially the definition of the Treasury Department as to the term "total disability," i. e., "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in Articles III and IV, to be total disability." United States v. Worley (C. C. A.) 42 F.(2d) 197; United States v. Phillips (C. C. A.) 44 F.(2d) 689; Blair v. United States (C. C. A.) 47 F.(2d) 109; United States v. Le Due (C. C. A.) 48 F.(2d) 789; McNally et al. v. United States (C. C. A.) 52 F.(2d) 440. The courts have, however, given reasonable and rational interpretation to the terms used in the Treasury Department definition. They have practically unanimously held that "total disability," as the term is used with reference to these war risk insurance cases, does not mean incapacity to do any work at all. The question is, not whether the party works, but whether he is able to carry on a gainful occupation. Of course, the work he does is an important factor to consider. United States v. Sligh (C. C. A.) 31 F.(2d) 735. In United States v. Acker (C. C. A.) 35 F.(2d) 646, 648, the court said: "Appellee's disability was not kept from being total by his intermittent business activities, if, without the exercise of ordinary care or prudence, they were engaged in at the risk of substantially aggravating the ailment with which he was afflicted." In United States v. Cox (C. C. A.) 24 F.(2d) 944, 946, the court said: "Ability to continuously follow a substantial, gainful occupation implies ability to compete with men of sound mind and average attainments under the usual conditions of life." United States v. Eliasson (C. C. A.) 20 F.(2d) 821;

Kelley v. United States (C. C. A.) 49 F.(2d) 897.

The word "impossible" as used in the Treasury definition is not given its literal meaning by the courts. In Nicolay v. United States (C. C. A.) 51 F.(2d) 170, 173, Judge McDermott says: "Again, the word 'impossible' must be given a rational meaning; it cannot fairly be said that it is 'possible' for an insured to work because, under the stimulus of a strong will power, it is physically possible for him to stick to a task, if the work is done at the risk of substantially aggravating his condition." The word "continuously" in the definition surely does not mean every day or some definite fixed period as a year or a month, but rather means a substantial portion of time, and, if a party can pursue a gainful occupation for a substantial portion of time as compared with the labor and intensity of work of others in similar lines, he is not totally disabled. There is really no such thing as continuous labor. Holidays, sicknesses, recreation periods, week-ends, all are breaks in the continuity of one's occupation, but would not necessarily destroy its continuity. In Ford v. United States (C. C. A.) 44 F.(2d) 754, 755, "continuously" as used in definition of "total disability" is construed as meaning with reasonable regularity in contradistinction to following a gainful occupation spasmodically. The court said: "We think the word 'continuously' should be construed as meaning with reasonable regularity; that it does not cover mere periods of disability such as are ordinarily incident to the activities of people in generally sound health." This seems to be reasonable.

■■ Any kind of work for which an insured may not be fitted, or competent, or qualified mentally or physically, cannot always be considered a "substantially gainful occupation." A man skilled as a plumber, a carpenter, an engineer, who, in order to keep the wolf from the door, sells apples on the corner from an improvised counter of store boxes, is hardly following a substantially gainful occupation; nor, if he come from the Army with paralyzed limbs and sits in an invalid's chair and sells shoe strings, is he engaged in what may be termed a substantially gainful occupation. These instances show the difficulty in applying the rule of law as to total disability, and illustrate that circumstances and conditions of each particular case must be determinative of the question. Disability is not the same under all circumstances and conditions. The Treasury Depart-

ment's definition of "total disability" must be considered in the light of the courts' decisions defining the terms used therein.

The trial court decided that prior to March 2, 1919, insured was totally and permanently disabled. The question for us is, not whether the court was right in its decision, but whether we can say there was no substantial evidence to support the court's findings and conclusion. Appellant claims that appellee was continuously employed, with the exception of eighteen months, from the date of his discharge from the Army up to February 25, 1931, and that such employment is a complete refutation of the claim that he was totally and permanently disabled. When testimony of witnesses is shown by the physical facts to be impossible, an appellate court is not powerless to act, if such testimony is the only evidence to sustain a trial court's judgment where a jury is waived. A judgment based on evidence that cannot be true cannot stand, and evidence that cannot be true is not substantial evidence. In F. W. Woolworth Co. v. Davis (C. C. A.) 41 F.(2d) 342, 347, the court says: "The rule is likewise settled that, 'when the testimony of a witness is positively contradicted by the physical facts, neither the court nor the jury can be permitted to credit it.' * * * Cases from many jurisdictions are gathered in a note in 8 A. L. R. 798, supporting the proposition that uncontradicted evidence which is contrary to physical facts should be disregarded. Judgments cannot and should not stand if they are entered upon testimony that cannot be true." Nicolay v. United States (C. C. A.) 51 F.(2d) 170. With this principle of law in mind, we examine the evidence in this case.

Insured served in the military forces in the World War four or five months. About a month after his discharge his father, who was working for a Mr. Cox who had a chain of stores in Little Rock, secured a position for him there handling freight. As a checker of freight, he was paid $12.50 to $15 per week. He was not able to carry this work, and was given a position as collector, he operating his own car in such work. Insured testifies he told Mr. Cox he had just gotten out of the Army and "wasn't able to work." About January 1, 1920, he was unable to report for work. Doctors were called, and he remained in bed at home about six months, then went to Hot Springs and stayed there a month under the doctors' treatments, came home for a month, then went to Houston, Tex., to a hospital, and there remained under

examination of government physicians for seven months, and then went home. After that he went back to work at Cox's Stores. In making his collections he testified: "I drive up to the store and I honk my horn and get the money and when I get to the warehouse they take the money and check it, then I take it to the bank with the boy that they send with me." From January, 1919, to January, 1921, he earned $12.50 to $15 per week. From July, 1921, to July, 1929, he received $20 per week. From July, 1929, to the date of trial, a period of eighteen months he received $25 per week, or $1,800 for that period, making over $10,000 received for the period in which he claims he was totally disabled.

Lieutenant Price testified that Perry was on the sick list most of the time while in the Army; that he made him an orderly because he was not physically able to do drill work and carry packs in marching; that at the time he was discharged he was sickly and unable to do anything; that when he saw him in 1921 he was on crutches; and that he had been on crutches every time he had seen him since. Witness Harris testified that, when he left Little Rock in 1920, Perry was in bed and was wholly paralyzed; that he could not move; that when he came back in 1928 Perry was working for Cox and was still on crutches. His father testified that, when he got home from the war he was sick; that he had been sick more or less of the time since, and had been unable to do any work; that he had been paralyzed most of the time, and had not had the use of his limbs; that he became totally paralyzed in 1920 or 1921. He testified he did not think the employment of his son was on the same basis as the employment of other men of the same age; that his son's disability had been continuous since 1919, when he was discharged. Witness Jolly, who had also worked for Cox Cash Stores, testified the insured and he were chums; that insured could only do whatever work the company saw fit to give him; that he was unable to do manual labor; that he had shortness of breath and was crippled on left side in 1919; that during the year 1919 he was undergoing frequent medical treatment; that he had been on crutches since 1919.

Dr. Granberry was perhaps the most important of insured's witnesses. He testified that Perry had a history of syphilis prior to 1919, that he had treated him for an arrested case of syphilis a couple of years before he went into the Army; that when he saw him in 1919 the syphilis had returned; that when

he examined him in 1919 after his discharge he "found partial paralysis and syphilis; that his heart was affected and he was in no condition at that time to engage in any labor, and that the last treatment which witness gave Perry was on January 11, 1920; that he treated him from January 18, 1919, until January 11, 1920; that Walter E. Perry visited him about once a month (Tr. 35); that there was no time during that year that Walter E. Perry was actually able, physically, to do labor." On redirect the doctor testified that in 1919 the syphilis had reached the stage or cycle that made it imperative that he not engage in labor. He testified that syphilis gets in the spinal cord and brain and causes paralysis; that in 1919 the plaintiff had reached the tertiary stage of syphilis; that the germ was in the spinal cord; that was the cause of the paralysis of the muscles of the legs; that sometimes the blood test will not show syphilis, and yet the spine can be punctured and then syphilis will show up there even after being properly treated.

The court asked some questions:

"Court: Could he work at that time? A. No, not to do any good, no, sir.

"Court: What could he do? A. Well, just anything light so far as manual labor is concerned. He doesn't do anything like manual labor.

"Court: Did it affect his brain? A. No, sir.

"Court: It went into his spinal cord instead of the brain? A. Yes, sir. (Tr. 40.)

"Court: Does that always produce paralysis when it reaches that stage? A. I think it would.

"Court: You had treated him in the first stage of syphilis, had you? A. Yes, sir.

"Court: Some years before that? A. Yes, sir."

He testified that in 1919 when he treated Perry he was suffering from syphilitic rheumatism, which finally resulted in paralysis of his lower limbs, that it was locomoter ataxia, and that it was incurable. This is the strongest evidence to sustain appellee's claim of total disability.

The government introduced duly certified copies of the records of the war department showing physical condition of insured at time of entering the service and at time of discharge. The statements of the insured in his declaration preceding discharge from the service were entirely at variance with his statements on the stand. The certificate of the surgeon who examined him for discharge stated he was physically and mentally sound and not disabled in any degree. The statements of these physicians cannot be reconciled with other evidence. The only witness used by the government was Dr. Ponder, who was a specialist in nervous and mental diseases. His testimony was to the effect that during the period of syphilis the person diseased is not unable to work; that it is about ten to fifteen years from infection to neuro-syphilis; that the work done by Perry from January, 1919, as checker, was good for him. He testified Perry would never be any better, and that if the disease invades the brain plaintiff may lose his mind, that the syphilis did not totally and permanently incapacitate him over the period during which he was working.

In Nicolay v. United States, 51 F.(2d) 170, the appellate court sustained the lower court's judgment that plaintiff was not totally and permanently disabled where he had held a steady job as a bus driver for nearly sixteen months, working eight hours a day including Sundays.

In Nordberg v. United States (D. C.) 51 F.(2d) 271, it was held that, where plaintiff had worked eighteen months as a blacksmith immediately preceding the trial term of court, he was not totally and permanently disabled as claimed by him.

In United States v. Rice (C. C. A.) 47 F. (2d) 749, it was held that there was failure of proof as to total disability when plaintiff had worked for a period of about five years as railroad employee, clerk, and truck driver, six months of such time not being accounted for, and had earned about $5,000. It referred to the difficulty the court had experienced in upholding the judgment in the Sligh Case ([C. C. A.] 31 F.(2d) 735), where plaintiff had earned from $125 to $250 per month over a period of eighteen months, and said that it had there sustained the finding of total and permanent disability because plaintiff "was afflicted with active tuberculosis and should not have worked at all."

In United States v. Barker (C. C. A.) 36 F.(2d) 556, the court held as a matter of law that the disability shown was not at the time the policy lapsed total disability.

In United States v. McLaughlin, 53 F. (2d) 450 (this court, opinion filed November 2, 1931) it was held that plaintiff had failed to show total and permanent disability before policy lapsed.

A very recent case is United States v. Seattle Title Trust Company, 53 F.(2d) 435, 437 (Ninth Circuit, opinion filed November

9, 1931). At the time of trial plaintiff was in an insane asylum suffering from paresis resulting from syphilis. He had frequently and for long periods of time engaged in a gainful occupation, as is the situation of plaintiff here, and he had also received a large amount of compensation for such labor. The court took judicial notice of the fact that syphilis does not necessarily result in permanent and total disability. The court said: "In this case the fact is that he did work, and there is no testimony to justify the conclusion that he was not able to work; that is, that he was not able to do what he did in fact do. * * * In view of the fact that during most of this period the insured was actually engaged in working continuously at a gainful employment, the fact that his health was impaired does not indicate his total inability to perform such labor." The court drew a distinction between a case involving syphilis where some physical work was beneficial and a case of tuberculosis, where work may injuriously affect the afflicted person. Judgment for plaintiff was reversed.

In Blair v. United States, 47 F.(2d) 109, 111, we said: "For a court to find under this evidence that prior to March 31, 1919, appellant was totally and permanently disabled would be a mere guess, unsupported by any substantial evidence."

From appellee's testimony it appears that with the exception of eighteen months when he was in hospitals he worked for approximately ten years after his discharge as a collector; that he received during said time for such labor over $10,000, and this during the period when he claims to have been totally disabled. Unquestionably he was disabled by the syphilis with which he was afflicted, but is it possible that a man can be totally and permanently disabled who can for a period from January, 1919, up to February, 1931, with the exception of eighteen months, carry on his work as a collector and earn over $10,-000? There is no question that he did the work and was able to do it.

■ The courts have given to these insurance policies a liberal construction in fa-

vor of the soldier. It must not be forgotten, however, in our sympathy for an afflicted veteran that these insurance policies are contracts and not gratuities, that the burden is on the party claiming recovery to show total and permanent disability during the term of the policy, and, if he does not, courts have no right to appropriate to him funds of the government. This court, speaking by Judge Gardner in United States v. Le Duc, 48 F. (2d) 789, 793, said: "After all, the right of recovery in these war risk insurance cases is dependent on contract, and it is not within the province of the jury to award from the public funds gratuities to relatives of deceased ex-soldiers; neither can we, under the guise of liberal construction, close our eyes to the undisputed facts disclosed by the record in this case and sustain this verdict on the theory of a constructive, permanent, total disability, which finds support only in a series of superimposed retroactive presumptions."

■ The evidence here of subsequent employment for a period of twelve years, with an intermission of eighteen months, conclusively, in our judgment, refutes any theory that insured was totally and permanently disabled prior to March 2, 1919. We recognize that in a case of this character the evidence must be considered by the appellate court in the most favorable light to plaintiff's claim. No case can be found, we assert with some confidence from a careful examination of the cases, where any such continuity of labor in carrying on an occupation is shown as here, where recovery was permitted. It completely negatives the claim of total disability during the life of the policy. While the question of total and permanent disability under these war risk insurance policies is generally for the jury, we are unable to escape the conclusion that the evidence in this case as to his total and permanent disability, in view of the fact that appellee carried on a gainful occupation for nearly ten years after his discharge from the Army, is not of that substantial character necessary to sustain such finding by the court. The judgment is reversed and the case remanded.

Reversed and remanded.