**UNITED STATES v. McGILL.**

No. 9278.

Circuit Court of Appeals, Eighth Circuit.

Feb. 16, 1932.

W. N. Ivie, U. S. Atty., of Ft. Smith, Ark. (Cleveland Cabler, Regional Atty. Veterans' Bureau, of Little Rock, Ark., and G. T. Sullins, Asst. U. S. Atty., of Ft. Smith, Ark., on the brief), for the United States.

Before KENYON, VAN VALKENBURGH, and GARDNER, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

September 3, 1929, appellee filed suit in the District Court for the Western District of Arkansas to recover upon a war risk insurance policy, alleging total and permanent disability suffered while said insurance policy was in full force and effect. The army service of appellee began March 30, 1918. He was discharged from the army July 15, 1919. June 7, 1918, he applied for and was granted, under the War Risk Insurance Act (38 Stat. 711, as amended), insurance in the sum of $5,000, as shown by stipulated amendment to his original complaint. The last premium paid by appellee was for the month of July, 1919, and his policy lapsed August 31, 1919, the last day of grace, unless it was kept alive by the total and permanent disability of appellee on or before the last-named date. The burden was upon appellee to establish this crucial fact.

Appellee testified: "When I was discharged one of my eyes was in bad condition, and the other was not good. * * * And my eyes have gradually decreased every day since I have been out of the army, and my eye sight finally left me in 1927."

He states that he first filed a claim for compensation with the Veterans' Bureau on account of his eyes in 1927; that while in the army he received medical treatment for another ailment, but none for his eyes. After his discharge from the service he secured employment as a log cutter with the Ozan-Graysonia Lumber Company, of Graysonia, Ark., by which company he had been employed as a log cutter before he entered the army. He worked for this company from

July 25, 1919, to some time in 1922, a period of between two and three years. While so employed, he testifies that he earned variously $1, $1.50, and $1.75 per day. In his application for compensation to the Veterans' Bureau, he stated that he made on an average of $4 per day, but that his eyes became so bad in 1927 that he could not work any more. At the trial February 16, 1931, appellee further testified as follows: "I never did receive any treatment for my eyes while I was in the army, and the first time that I ever applied for treatment to the Veterans' Bureau for my eyes was in 1927. I never reported at all to the Bureau from the time I was discharged in 1919 until 1927. I never had my eyes treated before I was discharged from the army by any doctor, never did have them treated at all, and I am testifying as to the condition of my eyes as to what I know myself that I cannot see out of my right eye."

E. L. Bloodworth, foreman of the Ozan-Graysonia Lumber Company, testified that in 1922 he discharged appellee because he feared that, because of defective eyesight, appellee might get injured. However, on cross-examination, he said: "I don't remember just when he put in his application for compensation. I believe I remember making an affidavit for him at that time, I don't remember whether this was in 1928 or not. He worked for me several years afterwards, that is, off and on."

It appears that this employment, which continued for several years, was subsequent to appellee's discharge in 1922. While there is some testimony that that employment was interrupted on occasions during this time, there is no showing as to the extent of such interruption.

P. J. Stewart of Bluffs, Ark., testified that he had been acquainted with appellee since 1927 or 1928; that in 1928 appellee was working for the Bruce Lumber Company at Gilmer, at which time he was again under Foreman Bloodworth. Stewart further testified as follows:

"I observed him there at the store the first time I knew him. He came to the store and he complained about being laid off on account of his eyes. I don't remember what month that was, I don't know what date, it was during that job though. I learned from him that he was working on that job. At that time he was not totally blind. He did not have to have any help to get around, he did not need any help at that time when he came around there at first.

"Cross-Examination:

"Q. At the time you knew him was there any defect in his vision? A. He claimed there was.

"Q. Could you notice it from his actions? A. From his actions, he acted like there was something wrong with his eyes."

The certificate of the examining surgeon at the time of McGill's discharge is as follows:

"I certify that:

"The soldier examined above has this date been given a careful physical examination, and it is found that he is physically and mentally sound.

"In view of occupation he is 0 per cent disabled.

"[Signed] J. C. Brookhart, Capt. M. C. U. S. Army."

The enlistment record states, "Physical Condition when discharged; Good."

Appellee admits that, when he was asked about his physical condition at the time of his discharge, he stated that it was good, but said: "I told Second Lieutenant Fitzpatrick in the army that my eyes were bad. I did not know the name of the surgeon that examined me at the time of my discharge."

This court has had occasion to consider the term "total disability" in many cases. United States v. Worley, 42 F.(2d) 197; United States v. Phillips, 44 F.(2d) 689; United States v. Vance, 48 F.(2d) 472; McNally v. United States, 52 F.(2d) 440; United States v. McLaughlin, 53 F.(2d) 450, 451; United States v. Hairston, 55 F.(2d) 825; United States v. Perry, 55 F.(2d) 819 (the last two cases being decided January 18, 1932).

A very recent, and well-considered, case in the Tenth Circuit is Nicolay v. United States, 51 F.(2d) 170, 173. As stated in United States v. Perry, supra: "The courts have quite generally adopted substantially the definition of the Treasury Department as to the term 'total disability,' i. e., 'Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in Articles III and IV, to be total disability.'"

It is therein further stated that rational interpretation is to be given to the terms used in the Treasury Department definition; that the term "total disability" as used therein does not mean incapacity to do any work at all. Concerning the words "impossible" and "continuously," Judge Kenyon says: "The word 'impossible' as used in the Treasury

524

definition is not given its literal meaning by the Courts. In Nicolay v. United States [C. C. A.] 51 F.(2d) 170, 173, Judge McDermott says: 'Again, the word "impossible" must be given a rational meaning; it cannot fairly be said that it is "possible" for an insured to work because, under the stimulus of a strong will power, it is physically possible for him to stick to a task, if the work is done at the risk of substantially aggravating his condition.' The word 'continuously' in the definition surely does not mean every day or some definite fixed period as a year or a month, but rather means a substantial portion of time, and, if a party can pursue a gainful occupation for a substantial portion of time as compared with the labor and intensity of work of others in similar lines, he is not totally disabled. There is really no such thing as continuous labor. Holidays, sicknesses, recreation periods, week-ends, all are breaks in the continuity of one's occupation, but would not necessarily destroy its continuity."

Indeed the opinion in United States v. Perry, supra, comprehensively establishes the law applicable to this class of cases, and further elaboration, if not impracticable, is at least unnecessary.

■■■ It is true that appellee, in the course of his testimony, states that he has been unable to earn a living at any time, since his discharge from the army, and that he has been unable to hold a job longer than a week at a time since his discharge from the Ozan-Graysonia Lumber Company. This self-serving statement stands substantially unsupported in the record, and is positively contradicted by the physical facts disclosed in the testimony. There is proof, without contradiction, of substantially continuous and gainful employment from July, 1919, until some time in 1922, and for several years thereafter "off and on," according to appellee's witness Bloodworth. Concerning this phase of the controversy, we adopt the following excellent statement of Judge McDermott in Nicolay v. United States, supra: "Like any other question of fact, the subsequent employment may be of such duration, and be of such a nature, that it conclusively refutes any idea that the insured might have

been permanently and totally disabled prior to and during the employment. United States v. Barker (C. C. A. 9) 36 F.(2d) 556; United States v. Rice (C. C. A. 9) 47 F.(2d) 749; U. S. v. Harrison (C. C. A. 4) 49 F.(2d) 227; United States v. LeDuc (C. C. A. 8) 48 F. (2d) 789; Ross v. United States (C. C. A. 5) 49 F.(2d) 541. These cases are in accord with the principles of the long list of cases cited above holding the question to be for the jury; they do no more than to apply the further settled principle that, ' "when the testimony of a witness is positively contradicted by the physical facts, neither the court nor the jury can be permitted to credit it." American Car & Foundry Co. v. Kindermann (C. C. A. 8) 216 F. 499, 502; Missouri, K. & T. Ry. Co. v. Collier (C. C. A. 8) 157 F. 347, cert. denied 209 U. S. 545, 28 S. Ct. 571, 52 L. Ed. 920. Cases from many jurisdictions are gathered in a note in 8 A. L. R. 798, supporting the proposition that uncontradicted evidence which is contrary to physical facts should be disregarded. Judgments cannot and should not stand if they are entered upon testimony that cannot be true.' Woolworth Co. v. Davis (C. C. A. 10) 41 F.(2d) 342, 347."

■ Appellee apparently consulted no one about his eyes, nor asked compensation, on that account at least, until 1927. Indeed, according to his own testimony, it would seem that he was not suffering from total blindness even at the time of trial. However, upon this we make no point. Appellee has failed to carry the burden of proving that he was totally and permanently disabled while his policy of insurance was in force, and for that reason he cannot recover in this action. While it seems certain that he is suffering from serious, if not total, impairment of eyesight, which necessarily appeals to our sympathy, we are forced to the conclusion that his remedy against the United States, if any he has, must be in the nature of compensation rather than of insurance. Upon this point we express no opinion. In view of our conclusion upon the merits, we find it unnecessary to consider any other error assigned.

The judgment below is reversed, and the case remanded for further proceedings not inconsistent with this opinion.