## UNITED STATES v. HARTH.
### No. 9421.

Circuit Court of Appeals, Eighth Circuit.
Oct. 25, 1932.

Harry M. Reed, U. S. Atty., of Waterloo, Iowa (D. C. Browning, Asst. U. S. Atty., of Sioux City, Iowa, and H. F. Dickensheets, Asst. Ins. Atty., of Des Moines, Iowa, on the brief), for the United States.

David F. Loepp, of Sioux City, Iowa, for appellee.

Before STONE, KENYON, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This is an appeal from a judgment against the United States upon a policy of war risk insurance. Substantially the only error assigned and argued is the action of the trial court in refusing to grant appellant's motion for a directed verdict upon the ground that plaintiff-appellee had failed to prove the existence of a permanent and total disability during the life of the contract sued upon. Error was also assigned to the court's charge relative to total and permanent disability, but the substance of this point is embraced within the scope of the preceding assignment and may be resolved accordingly.

The essential facts by which the disposition of this case must be controlled are the following:

Appellee enlisted in the army of the United States May 13, 1918 and, on the following day, was granted a ten thousand dollar policy of war risk insurance. September 12, 1918, while engaged in the St. Mihiel drive, he sustained an inguinal hernia on the right side. This was subsequently successfully reduced by operation at the Army Base Hospital at Nantes, November 11, 1918. September 25, 1918, in the Argonne, appellee received a severe shrapnel wound in the right thigh. On the following day he was taken to a field hospital, where the shrapnel was removed. He was then transferred to a base hospital where, October 9, 1918, the shrapnel wounds were corrected and closed. His transfer to the base hospital at Nantes followed, and December 18, 1918, he was sent back to the United States. He was discharged from the army January 28, 1919.

His Army Service Record shows that the Board of Review, January 14, 1919, reported a maximum improvement attained with respect to hernia and gunshot wound, but allowed a total of 10 per cent. disablement, for which appellee still receives compensation. His policy of war risk insurance lapsed March 14, 1919, unless then matured, as now claimed by the soldier.

Shortly after his discharge he went to Kansas City, Mo., where, for seven months, he worked for the W. B. Young Supply Company, in the plumbing supply business. His testimony is, that his employment required him to lift heavy fittings, pipe, and the like; that this caused his right leg to tire and pain him; that he was compelled frequently to take time off on this account, which resulted in his discharge because of his inability to work steadily.

About two months after leaving the Young Supply Company he went to Sioux City, Iowa, and began working for the Wigman Company, also a plumbing supply house. He worked there as a checker and packer of plumbing supplies. After checking and packing he wheeled these supplies to the depot or station where they were placed for hauling and delivery. He states that this distance of wheeling was short—about that of the width of the courtroom in which the trial took place. He held this position at Wigman's from February, 1920, until April 1, 1926. His hours were from 7 a. m. to 5:30 p. m., with an hour for luncheon. He was paid $35 per week, and received a vacation of one week each year in common with other employees. During this employment of rather more than six years he was compelled to lay off only two periods of any length, one of three weeks in October, 1922, and one of two weeks in August, 1924. He says he was absent from work for short periods in addition to these longer ones. The Wigman Company paid him in full for all but these longer absences. He also worked overtime during the taking of inventory and received extra pay therefor. His pay during this service aggregated nearly $11,000. He voluntarily left the employ of the Wigman Company April 1, 1926. He says he did this because he felt he couldn't keep his work up because of pain and weakness in his leg. The treasurer and manager of the Wigman Company testified that appellee's services were satisfactory when he was there, that he was with the company for several years, received a salary of $35 per week, was not paid this amount because of sympathy, and left their employ of his own accord.

After leaving the Wigman Company, appellee worked for two weeks in August, 1926, as a helper for a firm of paper hangers and painters. This work required him to go up and down stairs with heavy loads. He found himself unable to do this work because of the condition of his leg, and since that time he has undertaken no further employment. His claim is that the injuries he received in the service make his right side weak; that his leg tires easily and starts to ache and pain as a result of exertion. Appellee testifies that his condition at the time of trial in June, 1931, was about the same as it was in April, 1926.

The condition from which appellee suffers, as described by one of the physicians in the testimony, "is a rupture of the fascia, which we call the fascialata, that is nothing more than an enveloping sheath to hold the muscles in abeyance to their contraction and extension, and the muscles protrude through this wound on the outer side of the leg. When he contracts that muscle on account of this developing sheath being split the muscle ruptures or protrudes out through that rent or opening in the fascia. This of course interferes with the function of the muscle materially, and also causes pain and tiring of that limb on exertion, even standing for a long period of time with the protrusion of this muscle out through this rent in the fascia would cause an aching and a weakening of the limb. That is permanent."

Dr. Laughlin, called as a witness by appellee, examined Harth first about in June, 1929. In his opinion the condition found resulted from the shrapnel wound and was permanent. He says:

"I believe he would have to sit down and rest and he would have some pain as a consequence."

"I don't believe this man could do hard manual labor constantly."

On cross-examination he testified further as follows:

"I was government physician for quite a while after I got back from France, but I don't know whether I examined this man at that time or not. I don't think I examined him prior to my examination of two years ago.

"Q. Can you definitely say and positively say that the condition in 1921 was the

same as it is now? A. I would say that it is worse now.

"Q. The rupture has grown larger; if there was any rupture at that time it had grown larger? A. Yes sir.

"Q. I say is it possible that there was no rupture to begin with of the repaired tissue, and that finally the repaired tissue gave way and left a rupture there, would that be possible? A. Yes sir, that would be.

"Q. You are not in position to say that the condition back in 1921, 1922, 1923 and 1920 was the same as it is now? A. I think it is worse now.

"Q. For all you know he may have been able to work back in that time, is not that true, Doctor? A. For all I know. My recollection from my first examination, that is two years ago, is that the bulging is much more prominent now than it was two years ago."

Dr. Valiquette, also for appellee, first examined the soldier September 25, 1930. He found the same condition resulting from the rupture of the fascia. He says: "A man with that kind of a leg doing common labor would experience some pain. I would say that the difficulty would be more a weakness with some pain. * * * I don't think this man could do work involving him on his feet."

Dr. Lincoln, called by the government, first examined appellee May 1, 1924. At that time he complained of weakness and pain in his right lower extremity. There was no evidence of muscle protrusion at that time. "As a result of the (shrapnel) wound there was probably scar tissue formed which would impinge the nerve and cause pain." "There would be some weakness of the leg."

Dr. Koch, for defendant, examined appellee several times between August, 1920, and January, 1922. He found no bulging of the muscles out of the scar at these times. The medical testimony differs as to the feasibility and advisability of repair by operation. This question is not deemed of serious importance to the substantial issue in this case.

Some claim was made by counsel for appellee in argument that the bill of exceptions was not filed in time. No motion to strike appears in the record, the point is not urged in the brief, and is apparently abandoned. Furthermore, the record discloses that the last renewal order was made while the court, by previous order, still retained jurisdiction for this purpose, even after expiration of the trial term. The bill was filed within the period granted by this last extension, and was therefore in good time.

Turning now to the crucial point in issue, we find the applicable principles considered at length in many decided cases by this and other circuits. Careful analysis discloses that there is no substantial conflict in these decisions. Different facts have led to apparently divergent conclusions, but such can be reconciled generally by obvious points of distinction. The question here is whether there is in the record any substantial evidence to support the verdict and judgment. United States v. Phillips (C. C. A. 8) 44 F. (2d) 689, 691; United States v. Perry (C. C. A. 8) 55 F.(2d) 819; United States v. Worley (C. C. A. 8) 42 F.(2d) 197.

"Where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury." Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 233, 74 L. Ed. 720.

The burden of proving permanent and total disability while the insurance contract was in effect, is upon a plaintiff. United States v. Le Due (C. C. A. 8) 48 F.(2d) 789; United States v. McLaughlin (C. C. A. 8) 53 F.(2d) 450, 452; United States v. McGill (C. C. A. 8) 56 F.(2d) 522.

There is in the testimony serious dispute as to whether the injury of which appellee complains is permanent, or, at least, was permanent, in its earlier stages; but we believe that the evidence on this phase of the controversy was so far conflicting as to render the finding of the jury thereon final and conclusive. The sole question then is whether the disability was total while the contract of insurance was in effect. As has been said, that contract lapsed for nonpayment of premiums March 4, 1919, unless total disability is established prior to that date.

"The courts have quite generally adopted substantially the definition of the Treasury Department as to the term 'total disability,' i. e., 'Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in Articles III and IV, to be total disability.'" United States v. Perry (C. C. A. 8) 55 F.(2d) 819; United States v. Mc-

Gill (C. C. A. 8) 56 F.(2d) 522, 523, and cases cited.

The courts have applied this definition sympathetically. It has been held that ability to work means a capacity that may be exercised without serious peril to the life or health of the assured, United States v. Phillips (C. C. A. 8) 44 F.(2d) 689; Carter v. United States (C. C. A. 4) 49 F.(2d) 221, 222, 223; or without the risk of substantially aggravating the ailment with which he is afflicted, United States v. Acker (C. C. 5) 35 F.(2d) 646, 648; United States v. Lawson ('C. C. A. 9) 50 F.(2d) 646, 651; United States v. Martin (C. C. A. 5) 54 F. (2d) 554, 555; United States v. Perry (C. C. A. 8) 55 F.(2d) 819, 821; Marsh v. United States (D. C.) 33 F.(2d) 554.

It has been pointed out that, under certain conditions, the fact that a claimant may have worked for substantial periods during the time of claimed total disability is not necessarily conclusive against him. Carter v. United States (C. C. A. 4) 49 F. (2d) 221, 223. "Continuously" means with reasonable continuity and regularity, as other men normally work. United States v. Perry (C. C. A. 8) 55 F.(2d) 819, 821; Ford v. United States (C. C. A. 1) 44 F.(2d) 754, 755; White et al. v. United States (C. C. A. 5) 53 F.(2d) 565, 567; Carter v. United States (C. C. A. 4) 49 F.(2d) 221, 223; Nicolay v. United States (C. C. A. 10) 51 F.(2d) 170, 173.

As said by this court in United States v. Perry, supra, a substantially gainful occupation is any kind of work for which an insured may be fitted, or competent, or qualified mentally or physically. Compare United States v. Rasar (C. C. A. 9) 45 F.(2d) 545; United States v. Worley (C. C. A. 8) 42 F.(2d) 197. But this does not mean "merely the inability of the insured to follow his prewar occupation; he must be disabled from following 'any substantially gainful occupation.'" United States v. Thomas (C. C. A. 4) 53 F.(2d) 192, 195.

In deciding a case very similar to that before us in its essential features the Court of Appeals for the Ninth Circuit said:

"There was considerable testimony relating to the back injury, and we have no desire to minimize the suffering and inconvenience resulting therefrom. But we feel constrained to hold that the manual labor performed by the appellee for the period of five years following his discharge from the army and the compensation received for his services are utterly inconsistent with his present claim that he was totally and permanently disabled before the policy lapsed. * * *

"A finding by the jury that the appellee was unable to do that which he had been doing almost daily for a period of more than five years is without support in the testimony. In so deciding we are not invading the province of the jury; we are simply declaring the law." United States v. Rice, 47 F.(2d) 749.

This statement has found approval in various forms of expression in this and other circuits.

In United States v. Wilson, 50 F.(2d) 1063, 1064, the Circuit Court of Appeals for the Fourth Circuit said: "We do not see how the position that the insured was totally and permanently disabled at the time of the expiration of the policy of insurance can be sustained. How can it be said that a man is not able to follow any substantially gainful occupation when he does work under practically continuous employment for a period of about eleven years?"

Neither court nor jury may credit testimony positively contradicted by physical facts. United States v. McGill (C. C. A. 8) 56 F.(2d) 522.

"Like any other question of fact, the subsequent employment may be of such duration, and be of such a nature, that it conclusively refutes any idea that the insured might have been permanently and totally disabled prior to and during the employment." Nicolay v. United States (C. C. A. 10) 51 F.(2d) 170, 173.

On this ground the Circuit Court of Appeals for the Seventh Circuit affirmed a judgment in favor of the government where it appeared that the insured had worked steadily for a year and a half and had received therefor over $3,000. Nalbantian v. United States, 54 F.(2d) 63.

In United States v. Lyle (C. C. A. 6) 54 F.(2d) 357, it was held that any inference of disability, prior to the lapse of the policy, which might be drawn from testimony of partial abnormality observed after the discharge of the insured in December, 1918, was completely refuted by the insured's work record which showed that he had been regularly employed with a single company from 1919 to 1924 as a salesman, during which

period he had drawn $6,572.50 as salary, and a large sum for expenses.

In United States v. Martin (C. C. A. 5) 54 F.(2d) 554, 556, it was shown that, after discharge and lapse of policy, the insured had worked for a considerable period, and had made a fair living for himself and family. The court found that a wound he had received while acting as a messenger upon the battle front had caused him suffering and disability and had, to some extent, handicapped him in business, thereby entitling him to compensation. However, it was held that "these considerations, abstractly worthy as they are, may not have the effect in a suit on a contract of giving to plain and undisputed evidence a significance contrary to its reasonable meaning."

This court reached the same conclusion on the same ground in United States v. Perry, 55 F.(2d) 819, 824. Judge Kenyon in his opinion said:

"Is it possible that a man can be totally and permanently disabled who can for a period from January, 1919, up to February, 1931, with the exception of eighteen months, carry on his work as a collector and earn over $10,000? There is no question that he did the work and was able to do it.

"The courts have given to these insurance policies a liberal construction in favor of the soldier. It must not be forgotten, however, in our sympathy for an afflicted veteran that these insurance policies are contracts and not gratuities, that the burden is on the party claiming recovery to show total and permanent disability during the term of the policy, and, if he does not, courts have no right to appropriate to him funds of the government."

And in the very late case of United States v. Fly, 58 F.(2d) 217, 219, Judge Stone for this court sums up the situation thus: "It is quite evident that appellee has been and is under a considerable handicap because of his condition brought about by his injuries, and is suffering a decided disability which may be permanent. But how can this court say that such disability is total, to the extent that it prevents him from 'following continuously any substantially gainful occupation,' when the undisputed evidence of the appellee, his wife, and his employer agree that he was at the time of trial and for eighteen months had been steadily employed at normal wages and had, in the words of his employer, 'performed his work there with me satisfactorily,' with absences of only about a week, caused by sickness? The evident injury to appellee and the highly meritorious service origin of this injury have inclined us to view this record with lively sympathy, but our duty is to take the evidence as we find it and to enforce the rights of these parties as defined by their contract. That contract required total injury before recovery could be lawfully had. This evidence clearly and unmistakably shows no such total injury. The motion for an instructed verdict should have been sustained."

Latterly there have been manifold attempts, where disability has become substantially total or permanent long after discharge and lapse of policy for nonpayment of premiums, to make this subsequent condition of totality or permanency relate back to a period antedating such lapse. Appeal is made to the sympathy which is quick to respond to the suffering of the soldier, particularly when its cause is of service origin. This sympathy has been expressed in those cases in which work, substantially gainful, by the insured has been excused and overlooked, where it has been deemed seriously to imperil his life or health. Typical of these are cases of tuberculars, as pointed out by Judge Hutcheson in United States v. Martin, supra, to which may be added those involving afflictions of the heart. Marsh v. United States, supra. The category should not appreciably be further extended. It should not be held to embrace cases of incidental pain and suffering resulting in some inconvenience and handicap to business. Such handicaps are suffered by many who work, and must work, to gain a livelihood, without hope of, or title to, compensation.

In Eggen v. United States (C. C. A. 8) 58 F.(2d) 616, 618, we sought to emphasize the essentials to recovery under a policy of war risk insurance, as distinguished from pension or compensation. Judge Sanborn, speaking for this court, said:

"A policy of war risk insurance was a contract of insurance between the government and the insured. It was not a gratuity nor an arrangement for a pension. The contingencies insured against were death and total permanent disability. If a policy lapsed, for nonpayment of premiums, before death or total permanent disability occurred, there could be no recovery under the policy. If either of the contingencies insured against occurred during the life of the policy, there could be a recovery.

"Total disability is any impairment of mind or body which renders it impossible for the insured to engage continuously in any substantially gainful occupation, and total disability is permanent if it is founded upon conditions which make it reasonably certain that it will continue throughout life. A total disability which has not become permanent before the lapse of a policy does not mature it, nor does a permanent disability which has not become total."

In that case the question of permanency rather than of total disability was the issue, but the following language from the Eggen Case is equally pertinent to the issue here: "When an insured has a total disability which, during the life of the policy, is not founded upon conditions which make it reasonably certain that it will continue throughout life, he may not lapse his policy and then, if the disease later reaches a point where the conditions are such as to make it reasonably certain that he will not recover, treat the policy as having matured as of the date of the lapse. He can only collect his insurance under such circumstances if he keeps the policy alive by the payment of premiums until his total disability becomes also a permanent disability."

It is to be presumed that any appreciable degree of disability is attended by discomfort, pain, or, at least, by inconvenience and handicap in the discharge of the normal activities of life. If such conditions are to be deemed sufficient to warrant recovery under the terms of a war risk policy, then the precision with which the degree of disability, necessary for such recovery, has been defined was wholly unnecessary.

■ Appellee sustained a severe wound while in service on the field of battle. It is no doubt a serious handicap in the pursuit of a substantially gainful occupation. He is entitled to compensation commensurate with the disability he has suffered. If that he now receives is inadequate, the law provides opportunity for review, and for increase, if that is found to be warranted. USCA title 38, § 494, p. 235; Hines v. United States ex rel. Livingston, 59 App. D. C. 363, 42 F. (2d) 347. But we cannot approve recovery upon a contract of insurance, the express and crucial terms of which have obviously not been met.

The judgment below must be reversed and remanded for further proceedings not inconsistent with this opinion. It is so ordered.