## UNITED STATES v. IRWIN et al.
### No. 6533.

Circuit Court of Appeals, Fifth Circuit.

Oct. 29, 1932.

C. P. Goree, U. S. Atty.

Thomas M. Stubbs and W. A. McClain, all of Atlanta, Ga., for appellees.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

This appeal from a verdict and judgment thereon, finding that plaintiffs' decedent became, before his war risk term insurance policies lapsed, permanently and totally disabled, presents the single question whether defendant's motion for directed verdict should have been granted.

It stands established by the record that plaintiff's decedent, Irwin, received serious injuries in action overseas. That he was gassed; that he was knocked down and partially buried by a shell, with concussion of the brain, resulting in psychoneurosis, and that he was bayonetted in the hand and forehead. That immediately after receiving these injuries he was hospitalized for some months, and that from time to time thereafter during his life he received hospital treatment. That after and as a result of the injury, he exhibited evidences of great mental strain and disorder, his condition being variously diagnosed as traumatic neurosis, organic brain trauma, and true epilepsy. That he was in a serious condition for many months before his death, the government does not deny. They contend (1) that these disabilities did not make their serious onset until sometime after the policy lapsed, and (2) that they never attained totality and permanence. They point to Irwin's army record, which shows that when he left the service on January 20, 1919, at Camp Gordon, Ga., he declared that he had no reason to believe that at that time he was suffering from the effect of any wound, injury, or disease, or that he had any disability or impairment of health, whether or not incurred in the military service; to the certificate of the examining surgeon at the same time and place, that Irwin "has this day been given a careful physical examination, and it is found that he is physically and mentally sound"; to a clinical record of the General Hospital, Plattsburg Barracks, of "final diagnosis; Psychoneurosis, condition on completion of case, recovered"; to a letter written in December, 1922, by Irwin to the Veterans' Bureau, in reply to a communication of their inclosing blanks for a claim for compensation, in which he said: "I am not disabled in any way and did not apply for compensation. The only thing I did was to write Senator Watson in regard to the soldiers bonus; the only thing I wanted was to get the soldiers bonus. It is true I was wounded in action but I am O. K. and was at the time of my discharge from the service. I did not write Senator Watson for compensation in any way so I don't think I can use the forms"; to the testimony of witnesses for both plaintiffs and defendant, that after his discharge from the service he did work as a moving picture operator in different places, and for considerable periods of time.

It is true that this evidence makes strongly against plaintiffs' contention that Irwin was in January, 1919, when his policy lapsed, totally and permanently disabled, but against this testimony plaintiffs have marshaled a mass of testimony, both lay and medical, of fact and of opinion, which, if believed, preponderantly overcomes defendant's damaging testimony, and fully supports the jury's verdict.

This testimony establishes that from and after the receipt of his injuries, he became subject to spells of an epileptic type, which, by their violence and the frequency of their

recurrence, made it impossible, without serious injury to his health, for him to earn a living. In short, while there is evidence that he worked, there is also evidence that the working was accomplished only at the cost of the gravest kind of convulsive seizures, attacks whose severity and frequency, if the evidence as to them which the record contains is believed, made it not only gravely prejudicial to his health for him to attempt to earn his living by employment, but practically impossible for him in any real way to do so.

In United States v. Martin (C. C. A.) 54 F.(2d) 554, and United States v. Crume (C. C. A.) 54 F.(2d) 556, both of which were reversed for failure to give the peremptory charge, we undertook to make a critical examination of the state of the authorities. We found the law to be that whether plaintiff became totally and permanently disabled within the life of a war risk policy is ordinarily for the jury to say, and that where a verdict in such a case accords with any reasonable view of the evidence, it must be upheld. That both private and public policies insuring against the contingency of the insured's becoming prevented by disability from earning a living for himself by working are liberally construed to give effect to their purpose of supplying, to the extent of the policy payments, the living of which the disability has deprived him. That the decisions give to the terms, "Total and permanent disability," the practical commonsense meaning, that one is totally disabled when he is not, without injury to his health, able to earn his living by work. They reject the idea that it is necessary to prove absolute inability to do any kind of work; they make it plain that though a plaintiff may have been able to perform some work, yet has been unable without injury to his health to make his living by working, he is, within the meaning of the policy, totally and permanently disabled.

An examination of the record in this case, in the light of these principles, convinces us that the government's contention, that there is no credible evidence that plaintiff's decedent, Irwin, was totally and permanently injured, cannot be sustained. For though the evidence which they offer strongly tends to disprove plaintiffs' claim, it cannot be said, in the face of the undisputed evidence in this case as to the fact of the serious injuries received by Irwin and their results, the frequent and severe convulsions which he experienced, of his general and final complete breakdown, and of the mass of testimony which the plaintiffs have offered, that it was not for the jury to say what testimony was true, and what not true, and what effect should be given to it.

Like Cox's Case (C. C. A.) 24 F.(2d) 944, and Wood v. U. S. (D. C.) 28 F.(2d) 771, this is a fact case in which it was for the jury to determine the question of the totality and permanence of the convulsive seizures, epileptic in character, if not true epilepsy, and when this totality and permanence set in.

The judgment is affirmed.