230

## UNITED STATES v. HANSEN.*
### No. 7226.

Circuit Court of Appeals, Ninth Circuit.
April 12, 1934.

John A. Carver, U. S. Atty., Erle H. Casterlin and Frank Griffin, Asst. U. S. Attys., and R. L. Slaughter, Atty., Department of Justice, all of Boise, Idaho, and Wilbur C. Pickett, Sp. Asst. to the Atty. Gen.

Hawley & Worthwine, Jess Hawley, and Oscar W. Worthwine, all of Boise, Idaho, for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

Appellee's complaint, based on his policy of war risk insurance, alleged that he became totally and permanently disabled during the life of the policy by reason of having contracted bronchial asthma, and the jury so found. The government contends on this appeal that the trial court erred in overruling its motion for a directed verdict, interposed on the ground that the evidence fails to establish the disability alleged. The service

*Rehearing denied June 15, 1934.

origin of the disability under which appellee now labors is not questioned; but it is contended that the disability is not total and permanent within the meaning of the law and the regulations of the Veterans' Bureau. The burden was on appellee to prove the affirmative of the latter issue, and we must view the evidence in the light most favorable to him.

The testimony in support of appellee's claim is undisputed. As a child he suffered from asthma until he was about twelve years old, but he had been free from asthma for seven years immediately preceding his enlistment in the Army in August, 1918. During his service he contracted colds which resulted in a recurrence of his asthmatic condition. He was honorably discharged in August, 1919, and the policy lapsed for nonpayment of premiums on September 30, 1919.

Immediately upon his discharge he returned to his home at Boise, Idaho, and, according to his testimony, "In a couple of days I had these wheezing and coughing spells [asthmatic attacks] again; I have never been free from the wheezing since that time, except perhaps a day or so at a time." About a month after his discharge he went to work as a candy maker, his pre-war occupation. The condition of his health at that time and the difficulty with which he worked he described as follows:

"That fall I went to work for Mr. Lewellyn, who operated a confectionery. * * * I was there from September to about the first of the year. I noticed at that time that I would choke up and wheeze * * * and used to go home sometimes in the middle of the afternoon, on account of this condition. * * * I noticed at night when I would go home after work, I used to go home choked up and sometimes I would knock off a few hours earlier and just go home and attempt to get what relief I could, and at nights I would still be choked up and unable to lie down. There was a time while I worked at Lewellyn's that I didn't work at all for three or four days, when I was choked up and wheezy and face swelled. I was flushed, and I coughed severely. During one of those attacks I don't sleep or eat. It is pretty difficult for me to talk; sometimes I can't talk. The first attack I had, in August, 1919, lasted about a week; that was before I went to work for Lewellyn. During the time I worked for Lewellyn I had an attack which lasted four or five days. I would say that was in November and overlapping into December. During the winter after I left Lewellyn's I

had three or four attacks when I would be down and sitting in bed and didn't get out; didn't sleep; had a hard time getting my breath and my face would swell, and my sides would get sore so I could scarcely stand the weight of a cover on them from the exertion; the muscles in my neck swelled up, and became painful."

 His condition remained unchanged throughout the following years and up to the time of the trial. However, the fact remains that he was employed almost continuously during those years at gainful occupations. In the ten years immediately following his discharge he worked as a candy maker for about two years; in a restaurant for about four years; as a laborer for about six months; in a printing shop for six months; as a gasoline station attendant for a year; and at other jobs. He was handicapped in his work because of his asthmatic condition, and was discharged from many of the positions for that reason. During the periods intervening between some of the jobs, he testified that he was unable to work, at times for several weeks and at times for several months, because of asthma. He also testified that while employed he was unable to be on the job from one-third to one-half of the time because of his asthmatic condition. Nevertheless, the fact remains that he was employed at least 75 per cent. of the time. His work record discloses that he worked for over eight years at different jobs from 1919 to 1930. In view of the work which he performed during those years, we cannot say that he is totally disabled. "That such employment may negative a claim of such [total and permanent] disability is too well established to require much elaboration or citation of authority." Persorius v. United States (C. C. A. 9) 65 F.(2d) 646, 648.

In United States v. Wilson (C. C. A. 4) 50 F.(2d) 1063, 1064, the insured veteran had worked under great difficulty and in great pain because of injuries received in the service, but, held the court, "How can it be said that a man is not able to follow any substantially gainful occupation when he does work under practically continuous employment for a period of about eleven years, and is so working immediately preceding the day of the trial?"

The most that can be said for appellee's claim is that "he has always been under a measure of disability, and to some extent the disability will be permanent" [United States v. Barker (C. C. A. 9) 36 F.(2d) 556, 558]. But the insurance is against total and permanent disability, not partial and permanent disability, and appellee's work record refutes any idea of total disability.

 There is medical testimony to the effect that appellee was totally and permanently disabled at the time of his discharge. But it is the testimony of doctors who did not examine him until years after his discharge, and their opinion, therefore, "is little better than a mere guess," and "might be termed a long-range retroactive diagnosis" [United States v. Hill (C. C. A. 8) 62 F.(2d) 1022, 1025]. "The physical facts positively contradict the statements of conclusion of the witnesses, and must control." United States v. McCreary (C. C. A. 9) 61 F.(2d) 804, 808. "Neither court nor jury may credit testimony positively contradicted by physical facts." United States v. Harth (C. C. A. 8) 61 F.(2d) 541, 544.

The motion for a directed verdict should have been granted.

Reversed.