## WILLS v. UNITED STATES.

(District Court, D. Montana. August 6, 1925.)

No. 367.

1. **Army and navy 51½, New, vol. 12A Key-No. Series—Construction of clause "total permanent disability" as basis for payment of war risk insurance to mean impairment of mind or body rendering average man incapable of following gainful occupation held error.**

Construction by director of statutory contingency of "total permanent disability," entitling veteran to payment of policy of war risk insurance, to mean impairment of mind or body, which would render average man incapable of following continuously substantially gainful occupation, and which it is reasonably certain would continue throughout life of insured, is erroneous; proper test in each case depending on its own facts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Total Disability.]

2. **Army and navy 51½, New, vol. 12A Key-No. Series—Evidence held insufficient to establish "total permanent disability" entitling World War veteran to recover on policy of war risk insurance.**

In action by World War veteran on policy of war risk insurance, evidence that since being discharged from army he had worked in mines for several years, although afflicted with pulmonary tuberculosis, and that at present he would be able to do light work, *held* insufficient to show "total permanent disability" entitling him to recover.

3. **Army and navy 51½, New, vol. 12A Key-No. Series—World War veteran, representing, in application for reinstatement of war risk insurance policy, that he was not permanently and totally disabled, held estopped to later set up total permanent disability.**

Where World War veteran, to secure reinstatement of policy of war risk insurance, represented in application that he was not permanently and totally disabled, he was thereby estopped to later claim payment of insurance on ground of total permanent disability, alleged to have existed since before time when he applied for reinstatement of policy.

At Law. Action by Ernest John Wills against the United States. Judgment for defendant.

Loy J. Molumby, of Great Falls, Mont., John W. Mahan, of Helena, Mont., and George W. Howard, of Butte, Mont., for plaintiff.

John L. Slattery, U. S. Atty., and W. H. Meigs, Asst. U. S. Atty., both of Helena, Mont.

BOURQUIN, District Judge. In this action, commenced May 30, 1923, to recover upon a war risk insurance policy in amount $10,000, plaintiff alleges the contingency upon which payment depends, viz. his "total

permanent disability," had happened upon his discharge from service and yet endures, by reason of epilepsy and tuberculosis. The answer is of denials.

From the evidence it appears that plaintiff, for some years employed in the Butte mines, on November 5, 1917 enlisted in defendant's military service, at Camp Grant, rather speedily developed pulmonary tuberculosis, and after three months hospitalization and on March 13, 1918, was discharged. In the meantime and on February 8, 1918, he procured the policy in suit, upon which he paid the premiums for two months and then permitted to lapse. Returning to Butte, he resumed work in the mines on April 4, 1918, and therein and about them to September 30, 1921; and, although his testimony is vague in respect to duration, it appears that he worked at least as steadily as during the five years before enlistment.

Subsequent to September, 1921, and until July, 1924, he sojourned in various government hospitals at intervals, wherein he was somewhat impatient of instruction and heedless of advice, and frequently absent "on furlough" or without leave. To what extent he worked during the interval last aforesaid and to this trial in May, 1925, is not disclosed.

From discharge to trial he has received from defendant $100 per month, the generous "compensation" afforded by a liberal statute and its indulgent administration.

In March, 1920, May, 1921, and May, 1922, he applied to reinstate the policy. Amongst his representations and conditions to that end are that his health was as good or better than at discharge, and in his last application that then his health was "fair" and he was not "permanently and totally disabled." By reason of statutory relaxation and waiver of conditions, the last application was granted in July, 1922. Of the ailments upon which plaintiff counts, there is no evidence of epilepsy, and of tuberculosis it is that it likely originated from his vocation as miner, at no time was extensive, but was limited to the upper lobes of the lungs, active in perhaps only the apices and one-fortieth to one-hundredth of the entire lungs, and much of the time was and now is arrested and inactive.

At the time of trial, he was of fair appearance and activity, some underweight, pulse and temperature normal, and in general in better health than at discharge and much of the time thereafter. Of his condition, he himself states only that during his work resumed in the mines he "started to get sick or weak," and worked at intervals only, that (in answer to grossly leading questions) in the year preceding trial he had a cough at some time, spit blood, night sweats, and afternoon temperature, and that the reason he quit work the first time in June, 1919, was that, from defendant getting "money enough" to live, he "felt" he "could quit."

The consensus of cautious opinion from competent medical diagnosis is that plaintiff is able to perform some labor, be better for it, preferably not in the mines but out of doors; that with care the tuberculosis may remain inactive and finally be eradicated; that for a time it would be advisable for plaintiff to enter a hospital and employ the graduated exercise theretofore rejected by him, so that if physical activity threatened to revive his ailment, proper treatment in prevention could be promptly applied.

[1-3] The statutory condition and contingency upon which insurance is payable is "total permanent disability," and the director, in exercise of statutory power, now construes this term to import "impairment of mind or body of a degree which would render the average man incapable of following continuously a substantially gainful occupation," and which it is "reasonably certain * * * will continue throughout the life" of insured. Whatever else may be said of this construction, it is markedly different from that prevailing at the time of Law's Case (D. C.) 290 F. 975, Id. (C. C. A.) 299 F. 61, and Id., 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401, for its criterion is "the average man," whereas before it was "the disabled person."

As every case depends upon its own facts, there can be formulated no general rule more definite than that relativity and circumstances control; and, as every insured's rights depend upon the consequences of his own impairment and disability, and not at all upon whether his capacity be less or more than the average man's, the present construction aforesaid is erroneous. At most the consequences of insured's impairment in relation to the ideal or average man are evidentiary only. Adhering to the views of Law's Case, it is clear that it does not appear reasonably probable that plaintiff at any material time was or now is of total permanent disability within the import of the statute. Hence his case fails in proof. Not only is it sheer impossibility that a totally disabled man could work in the Butte

mines as plaintiff did following his discharge, but in addition he is estopped to claim otherwise by his contrary representation as a condition precedent to reinstatement of the lapsed policy.

If any case in the books, of any variety of insurance or at all, would classify plaintiff as of total permanent disability, it is unknown and so counter to common sense that it is a valueless precedent. There is a present statutory limit to the insurance due to those enrolled in military service, and that limit does not include claims no better founded than plaintiff's. "What price glory" will mount to a sufficiently staggering total in a hundred years, if tendencies and history go for anything, without swelling it by unearned gratuities like those of this case. To yield to plaintiff's demand would pervert the statute; depart from the contract of the policy, abuse the bounty of the nation already generously enjoyed by him, incite greed in others, and is impossible. Nor is his case bettered by the argument, however well founded, that only by liberality can the veteran be placed on a parity with the 100 per center, the profiteer, the shipyard worker, and other stay-at-homes who took advantage of the nation's peril to enrich themselves by exorbitant prices exacted for materials and labor and by other means no less vile. To balance this account is not vested in the courts.

Judgment for defendant.