## ANDREWS v. UNITED STATES.

District Court, D. Colorado. August 31, 1928.

No. 8420.

Kenaz Huffman, of Denver, Colo. (Luke J. Kavanaugh, of Denver, Colo., of counsel), for plaintiff.

Forrest C. Northcutt, of Denver, Colo. (Richard A. Toomey, of Denver, Colo., of counsel), for the United States.

McDERMOTT, District Judge. This cause was tried to a jury. There was a verdict for the plaintiff, the jury finding that the plaintiff was totally and permanently disabled while his war risk insurance was in force, that is, prior to March 1, 1919. The government concedes that the plaintiff is now totally and permanently disabled, and has been since 1925, and that the present disability is a result of the wounds received during the war. It is clear that he was permanently disabled for many months while he was in army hospitals, in 1918. The government contended that between 1919 and 1925 there was a period when he was not totally disabled. Upon ample evidence the jury found that the plaintiff was totally permanently disabled while his insurance was in force, a finding with which the court agrees.

From the evidence it appears that some two years after the policy sued on matured the plaintiff procured its reinstatement, and in his application therefor stated he was not totally or permanently disabled. Some time thereafter he converted his reinstated policy into a smaller policy, and thereafter applied for and received a surrender value of about $90 from this converted policy. Each of these applications was accompanied by statements of the plaintiff that he was not totally disabled.

The government contends that his actions and statements are inconsistent with his present contention, and that, even if he was totally and permanently disabled in 1919, and entitled to his insurance, he is now estopped to so claim, by reason of the facts stated. The position of the government is a twofold one: The government relies upon the ordinary doctrine of estoppel, to wit, that the plaintiff may not now assert that the statements made in his applications above referred to were in fact untrue; and, second, that by virtue of the acts of the parties, the contract here sued on no longer exists, and that a novation has taken place, and a new contract exists which is not now in litigation. In support of this contention the government cites the following case: Wills v. United States (D. C.) 7 F.(2d) 137.

The question of estoppel was submitted to the jury, and by their verdict the jury has found that the statements made were not knowingly false, and that the government was not misled thereby. The facts in the case are not seriously in dispute. In the fighting around Chateau Thierry in the summer of 1918, a machine gun bullet caught the soldier in the arm. The injury to his arm prevented him from putting on his gas mask, and he was gassed. Thereafter he found his way back through the first-aid stations, through the field hospitals, and the

evacuation hospitals, to the base hospitals in Southern France. For long and weary weeks he was confined to the hospitals while the surgeons performed operation after operation for the purposes of drainage. Infection and finally gangrene set in, until to-day, after more than twenty operations, in each of which he was under a general anæsthetic, he finds himself with an amputated arm. As a matter of fact, there is so little of the stump left that there is no chance of him ever being able to use an artificial arm. Growing out of the gas attack to which he was subjected in the same engagement, is the asthmatic condition, which has gradually grown worse. For a long while he has been required to use adrenalin for the relief of asthma, and for nearly three years he has been permanently and totally incapacitated from a combination of the injuries to which he has been subjected. As a matter of fact, in the record the government frankly and fairly conceded that the soldier is now totally and permanently disabled, and has been for a period of nearly three years. His disability is attributable to a combination of wounded arm, the nervous shock of the many operations, and the asthma.

After his discharge from the army and the lapse of the insurance, the government made every effort to rehabilitate him. In this work the government had the hearty and cordial support of the soldier. He was given vocational training both in institutions and out of institutions. The soldier has made every reasonable effort to help himself, and during the period of time in question he took employment on several occasions, and made a sincere and honest effort to beat his way back. The efforts of the soldier were unsuccessful. The injuries which he suffered were such that, notwithstanding his desire to gain back his place among the workers of the world, his efforts were unavailing.

I think from the evidence that it is entirely clear that there was a period of two or three years when the soldier was hopeful of the future; he would subject himself to an *operation on his arm*, and, after that operation, there would be a time when he believed that the operation would give him permanent relief. He would shortly find himself unable to work again, and another operation would be advised, and the same process would be repeated. I have no doubt at all that a number of times during this period the soldier believed that he was not permanently disabled. Or, to put it another way, there were many times during this period when the

future seemed bright, and he was optimistic as to the future. It has been said that "hope springs eternal in the human breast." Backed by a desire to resume his place in the affairs of life, and with a strong willingness to make every reasonable effort to that end, I am entirely satisfied that, when he applied for a reinstatement of this insurance, he believed that his statement that he was not totally and permanently disabled was true. In other words, the evidence is convincing that, when he made the statement in his application for reinstatement of this insurance, he believed it to be true. Moreover, the government was not misled. The government had a complete record of his case, and through its doctors probably knew more about the question of whether his disability was total and apt to be permanent than did the soldier himself. In any event, it is quite clear that the government cannot contend that it was misled by the statement of the soldier.

█ We have then this situation: A soldier is in fact totally and permanently disabled, within the meaning of the law, but, during a period of hopefulness, unwilling to acknowledge that he could not recover, the soldier finds himself in a circumstance where he can no longer afford to carry the full amount of government insurance, and he asks to have the policy converted into a lesser amount. The question then is this: In fact and at law the policy sued on had already matured, and the soldier was at that time entitled to recover the face of the policy. Does he forfeit this insurance because he applied to convert the policy into one of lesser amount, at that time mistakenly, but honestly, believing that he would recover from his injuries?

I do not believe that there is anything in the evidence or the law that would justify a forfeiture of this policy by virtue of his efforts to convert his insurance. An insured under one of these policies is not justified in making a claim until he is totally disabled and until he believes it to be permanent. It is quite true that a man may be permanently disabled and not know it. A familiar case is that of tuberculars. A tubercular patient may be confined to his bed, and may never leave his bed, and yet in the early stages of his confinement firmly believe that it will only be a matter of a few weeks until he is quite well again. If at that time he should state that he believed he would recover, and was not permanently disabled, it would be a truthful statement of his belief, and could not operate as an estoppel.

█ Each case must stand upon its own facts.

It cannot now be disputed that the soldier was totally disabled in 1919, and he was then entitled to the proceeds of this policy. It is my opinion that his right to recover is not forfeited by the matters relied upon by the government, and the motion for judgment will therefore be overruled. Since the payment of the surrender value of the last policy was made to the plaintiff under a mistaken state of facts, the defendant should be credited with that sum with interest, in the judgment in this case.