## NORDBERG v. UNITED STATES.
### No. 512.

District Court, D. Montana.
July 9, 1931.

tional Guard was mustered into service in 1917, became beneficiary in the usual policy, saw service over seas, returned without scars save for appendicitis, nephritis, and another on the hip, all of antewar origin, and in May, 1919, was discharged without wound, impaired health, or disability, as appears by his signed statement and medical examination of record. Thereupon he was employed at his trade of blacksmith for two months and thereafter at "outside work" to November 10, 1919. Later was recurrence of his kidney trouble, and in February and April, 1920, were operations to relieve infection. He was in hospital at defendant's expense and allowance of $80 per month. Of duration of this is no definite evidence save his vague memory to July, 1920, after which he was again employed as a blacksmith to December, 1920. He then entered upon vocational training at defendant's expense and allowances of $100, $120 per month, he says from January, 1921, to March, 1923 (though the school's records say to September 30, 1923, and it collected accordingly), graduating as a bookkeeper. From graduation to August, 1923, he was accountant for the telephone company, was off one month because of flu, and with the company one more month, was released he believes because insufficiently trained. For that reason he applied for the benefits of further schooling but in telegraphy, which apparently refused, in February, 1924, he purchased an "auto shop" and conducted it as workman and overseer of employees to the fall of 1928.

In the mesne time and in March, 1921, he abandoned $7,000 of his $10,000 policy, in January, 1927, was rated of total and permanent disability in respect to the balance of $3,000, about then he married, and in November, 1927, was refused reinstatement of the $7,000 because of the rating aforesaid. So far as his later activities are concerned, he testified on direct only that in the fall of 1928 he had worked "off and on" two weeks in a foundry, but on cross admitted he had worked as blacksmith for the county from January, 1929, until he "laid off to go to the hospital in 1930," of which hospitalization is no other evidence. The county records disclose he thus worked 308½ days in 1929, and 181 days to August 17 in 1930, at $6 per day.

This action was commenced May 23, 1929, to enforce payment of the abandoned $7,000. No effort was made to bring it to trial until the October term, 1930, and it was tried January 19, 1931. There are statements of plaintiff and friends of "feeling sick, unable

John W. Mahan, of Helena, Mont., for plaintiff.

Wellington D. Rankin, U. S. Atty., of Helena, Mont., and D. D. Evans, Regional Atty. for United States Veterans' Bureau, of Ft. Harrison, Mont., for the United States.

BOURQUIN, District Judge.

Defendant moves for a new trial, contending the verdict for plaintiff in an action upon a war risk policy is not supported by the evidence. The nature of the latter permits brevity. It appears that plaintiff in the Na-

to work, looks bad, lay-offs, poor performance," etc., and of doctors that at all times he was disabled from labor. The most credible of his doctors, however, testifies that as bookkeeper, clerk, watchman, and the like he could function half to two-thirds of the time.

The court's notes at the trial record plaintiff of healthful appearance, alert, quick, and active.

■■ March, 1921, plaintiff ceasing to pay premiums upon the abandoned $7,000 of his policy in respect to which he sues, the issue is, was he then, at all times hitherto and now (not one, but all), of that total, permanent disability against which the policy insures and upon which defendant pays? See section 511, 38 USCA.

The burden is his to prove the affirmative, and not only has he failed, but the evidence of the eighteen months immediately preceding the term of trial, alone suffices to prove the contrary. Eighteen months as a blacksmith refutes all assertions, beliefs, and opinions of total disability. His acts speak louder, more truly than words, and any finding that what he did he was totally disabled from doing, is incited by interest and sympathy and not at all by reason, is a transparent absurdity.

In one of the earliest cases this court declared: "When earning ability or capacity is destroyed to an extent that no substantial portion remains on its merits to serve demand and to secure market, there is total disability, and if it be reasonably probable that this status will long continue, is not temporary, the disability is total and permanent in legal contemplation, and within the intent of this statute." Law's Case (D. C.) 290 F. 972, 976.

From that construction no reason to depart is perceived, and plaintiff's case is not within it.

■■ In 1929, in addition to insurance payments, not only did the generous defendant render to him at least $1,200 as a pension or compensation, but he actually worked at the hard labor of a blacksmith every working day save four and a half, and earned $1,-851—a total income of more than $3,051, which well might excite envy in the most able-bodied workman, and inspire hope for another war and "total disability" like in kind and benefits.

Counsel urges, however, that the statute vests authority in the administrative officers to "determine the full and exact terms and conditions" of the policies; that in exercise thereof they define total permanent disability as "any impairment reasonably certain to continue for life and which renders it impossible to follow continuously any substantially gainful occupation"; that this controls the courts; and that even though insured can labor half, two-thirds, three-quarters of the time, that is not continuous within said definition; and so he is totally disabled and entitled to payment of the policy. A sufficient answer is that laws which vest power in administrative officers to make regulations, import regulations to enforce the law as written, confer no authority to legislate, to amend and change the terms of the statute, to defeat the intent of congress, to create liability where the statute does not. The statute and its judicial construction control, not the regulation. In the former, Congress insured against but two particular events and specified contingencies, viz., "death or total permanent disability," the one well-nigh a synonym for the other, and authorized the administrative officers to "determine full and exact terms and conditions" of time, examination, amount, premiums, proofs, payment, etc., but not to legislate for insurance upon the happening of any other event or contingency. Congress stipulated that the policy will be paid if, when, and during total disability, not disability two-thirds, half, quarter, or anything less than substantially all. Had Congress intended the latter, it would have plainly said so, even as it did in the gratuity, compensation, or pension portion of the statute, wherein it clearly distinguishes between partial disability as low as one-tenth and total disability. And any regulation defining total permanent disability to import less than the clear common-sense meaning of the term, to impose on defendant liability to pay for disability less than the statutory total, is without authority, is favoritism, abuse of power, and void. Moreover, these officers of the Veterans' Bureau rejected plaintiff's claim that he was totally disabled when he abandoned the $7,000 of his policy now in suit, demonstrating their regulation is not to be construed as plaintiff would have it in order to recover here.

■ For that matter, all labor deteriorates and requires time to recuperate. There is no continuous labor. Hence, be the rest period longer or shorter, he who can pursue a gainful calling a half, third, quarter, or other substantial portion of the time is not totally disabled within this statute or any reasonable interpretation of the term.

Plaintiff's case is very like Rice's (C. C. A.) 47 F.(2d) 749, and Le Duc's (C. C. A.) 48 F.(2d) 789, wherein for analogous reasons the government was granted new trials.

See also Wills' Case (D. C.) 7 F.(2d) 137.

New trial granted.