## UNITED STATES v. CALDWELL.
### No. 5226.

Circuit Court of Appeals, Third Circuit.
Feb. 21, 1934.

Horatio S. Dumbauld, U. S. Atty., and Wm. J. Aiken, Asst. U. S. Atty., both of Pittsburgh, Pa.

Carl E. Glock and Smith, Shaw, McClay & Seifert, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.
This is a suit on a lapsed war risk policy of insurance brought under the War Risk Insurance Act, 40 Stat. 409, and World War Veterans' Act 1924, § 5, as amended by Act July 3, 1930, 38 USCA § 426, by a soldier who, with the insurance in force, was wounded in battle, sustaining disability which he claims is total and permanent. The government, regarding his disability as partial, moved for a directed verdict in its favor. The court, denying the motion, submitted the

case and the jury rendered a verdict for the plaintiff. The government appealed from the judgment that followed.

The sole question on the government's motion, and now on its appeal, is whether the claimed total permanent disability is negatived as matter of law by the plaintiff's work record and, accordingly, whether, within the definition promulgated in the regulations, there is evidence that he sustained an impairment of mind or body "which renders it impossible (for him) to follow continuously any substantially gainful occupation."

The evidence unquestionably proves a permanent disability; that at one time, and for a long time, it was total; and that, reckoned by the work the plaintiff has done since the war, it is either partial or total.

■■ The basic law and the decided cases establish the propositions that recovery may not be had on a contract of war risk insurance for temporary total disability, Mason v. United States (C. C. A.) 63 F.(2d) 791; or for permanent partial disability, United States v. Thomas (C. C. A.) 64 F.(2d) 245; or for total permanent disability occurring after the expiration of the policy, United States v. McGrory (C. C. A.) 63 F.(2d) 697; and that it is incumbent upon the plaintiff suing on such a policy to show by substantial evidence that when the insurance was in force he was totally disabled and that such total disability was reasonably certain to continue permanently. United States v. McGrory (C. C. A.) 63 F.(2d) 697.

With these observations of the law in mind, we shall look upon the evidence in the light which the Supreme Court, in Lumbra v. United States, 54 S. Ct. 272, 78 L. Ed. ——, has recently thrown upon such cases, and upon the construction which should be placed upon the rules and upon the conditions to which they are addressed with reference to disabilities occurring when the contract of insurance is in force and to disabilities continuing after its lapse, influenced in part by evidence of the way the sufferer has or has not worked under them.

■ The evidence which we judge by their verdict the jury accepted proves that before the war the plaintiff was a mining engineer, in good physical condition. When a first lieutenant of infantry he took out a war risk insurance policy which was in force when, in September 1918, he suffered four wounds in battle. A bullet struck him under the arm pit. An hour later a bursting shell fractured his skull and lodged a piece of metal in one of his lungs. Shortly after, a bullet

clipped a bone in his leg. For two days and two nights he received no medical attention.

The bullet wound in the arm pit was operated on in France, and resulted in gangrene. The bullet went through the nerve pack which supplies the arm and hand and for a time the arm was totally disabled. A second operation was performed in America in 1922, disclosing some paralysis of the arm, atrophy of the hand, disturbed circulation, wasting of bones, irritation of nerves, and constant pain. The nerve supplying the hand does not function well and is permanently injured. The arm was again attended in 1924, 1927 and 1928.

The skull fracture was in the frontal region over the left eye, crushing the sinuses and running up into the middle of the forehead. Two skull operations were performed in France, and a third in America in 1919 when the sunken cavity was rebuilt, leaving, however, a disfiguring scar. The left sinus is filled with grafted bone and scar tissue; the right sinus is filled actively with pus which constantly discharges.

The fragment of shell, the size of the end of a thumb, which lodged in the plaintiff's lung, remains there encapsulated below the upper left lobe where he feels it with every breath. It is a constant hazard and source of lung irritation, impairing the breathing capacity, weakening the general system and having a distinctly nervous effect. Doctors advise against its removal. So long as it is there, the man cannot exert himself for fear of dislodging the metal. The effect of this condition is bad.

The leg wound was of no consequence.

In general, the plaintiff is, at this time, highly nervous, emaciated, sensitive, depressed, and has the appearance of fright. He has a nervous heart with missing beats. Instead of weighing one hundred and seventy-two pounds as he did when he left for France he now weighs one hundred and forty-five pounds and has been as low as one hundred pounds. He sleeps badly and suffers severe headaches; he has frequent colds, and his eyes water all the time. His general breakdown appears not only to have been caused by the conditions we have recited but has been attended by four nose operations, two operations to his groin and side, and hemorrhoid and tooth operations.

We find the evidence of occurrences and of the plaintiff's condition within the life of the policy and the evidence of the condition which continued and developed thereafter (the latter bearing only on his disability

inflicted when the policy was in force) was sufficient to submit to the jury and to sustain a verdict of total and permanent disability within the statute and within the law of Lumbra v. United States, supra, unless the contrary is shown by evidence of the plaintiff's post-war occupations, indicating that, though permanent, his disability is in some measure or percentage partial.

The evidence on this, the second phase of the case, is briefly as follows:

The plaintiff, after his discharge from the army, applied for his pre-war position but was refused because of his disability. Not being able to do physical work, heavy or light, he sought and obtained positions as salesman. He worked as a broker for a coal company, followed by a nervous breakdown; then for another coal company, losing half time because of illness; then for a steel company, followed by another breakdown; then for a mortgage company, with loss of more than half time. This work was so intermittent and so interrupted by illness, operations and hospital treatment that, we think, if this were all his work, there would be no question of his inability continuously to follow a substantially gainful occupation. But persisting in his efforts, he secured a position with a bond house as salesman and held that position for several years on a salary of $125.00 per month, later raised to $225.00 per month, during the period when the public was buying securities rather wildly. He continued this work with like interruptions by illness and against medical advice, yet under the spur of the necessity, he says, of supporting his wife and children.

 It is conceivable on the evidence of this case that the plaintiff's substantial earnings when with the bond house were the result less of work than of sympathy for his condition and admiration for his grit. The fact that a soldier has done work of some kind in some measure does not, without more, negative his claim of total permanent disability. Nor does the mere fact that a soldier has done no work, or only a little, establish his claim of total permanent disability. Some persons, capable of work, prefer idleness. On the other hand, some who are totally incapacitated for work may, by strong will power or because of necessity, continue to work, as the plaintiff did, against the advice of physicians, and, perhaps, at the risk of serious physical injury. Or, as stated by the highest authority: "The mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life. But manifestly work performed may be such as conclusively to negative total permanent disability at the earlier time." · Lumbra v. United States, 54 S. Ct. 272, 276, 78 L. Ed. ——. Thus all the facts of a case, including, as matters of first importance, the soldier's injuries and his condition when the policy was in force, and including also the post-war history of his war inflicted injuries and the post-war conduct of the injured soldier himself, must be considered in determining whether he sustained during the life of the policy "total permanent disability," "the phrase * * * to be construed reasonably," and was therefore unable "to follow continuously any substantially gainful occupation." Lumbra v. United States, 54 S. Ct. 272, 275, 78 L. Ed. ——; Carter v. United States (C. C. A.) 49 F.(2d) 221, 223; United States v. Phillips (C. C. A.) 44 F.(2d) 689; United States v. Sligh (C. C. A.) 31 F.(2d) 735, 736.

Taking all the facts of this case and subjecting them to human and legal scrutiny, we hold there was evidence on the issue of total permanent disability enough to justify the submission of the case and to sustain the verdict of the jury.

The judgment is affirmed.