## ZUFALL v. UNITED STATES.

### No. 8356.

District Court, W. D. Pennsylvania.

June 19, 1940.

Decree Affirmed Jan. 23, 1941.

G. Roy Keitzer, of Pittsburgh, Pa., and E. J. McGinness, of McKeesport, Pa., for plaintiff.

Stanley Granger, Asst. U. S. Atty., of Pittsburgh, Pa., and John Powers, Sp. Atty., Department of Justice, of Washington, D. C., for defendant.

McVICAR, District Judge.

This is an action by Stanley Johnson Zufall against the United States to recover insurance for total and permanent disability as provided for in an insurance policy issued by the defendant to him.

The case was tried in November, 1936. At the conclusion of the evidence, defendant submitted a request that the court direct a verdict in its favor. This request was reserved. The jury returned a verdict in favor of the plaintiff for $6,957.50. Defendant filed motions for a new trial and for judgment non obstante veredicto. These motions and the reserved question of law were argued June 11, 1940. The only question argued was whether the court, as a matter of law, should have directed the jury to find a verdict in favor of the defendant, on the ground that there was no substantial evidence that he was totally and permanently disabled on or prior to October 18, 1928.

The applicable rule is set forth in Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720 (which case has been cited often), as follows:

"A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more reasonable rule 'that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' * * *

"Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury. And in determining a motion of either party for a peremptory instruction, the court assumes that the evidence for the opposing party proves all that it reasonably may be found sufficient to establish, and that from such facts there should be drawn in favor of the latter all the inferences that fairly are deducible from them."

The plaintiff entered the military service of the United States October 11, 1917. On February 1, 1918, there was issued to him a ten thousand ($10,000) dollar policy of war risk insurance, covering total and permanent disability. He was discharged from the Army August 6, 1919. He continued to pay the premiums on his war risk insurance policy until December 1, 1924, when his policy was converted into a twenty year endowment policy, covering total and permanent disability. This policy, by virtue of the premiums paid, remained in force until October 18, 1928. On March 19, 1934, plaintiff filed a claim with the defendant for total and permanent disability benefits. This claim was refused July 23, 1935, after which he brought the present action.

Plaintiff was in good health when he enlisted. During his military service he had two attacks of influenza. He suffered extreme nervousness arising from heavy artillery fire over a period of ninety days, intermittently. From July to December, 1919, he was troubled with an abscessed tooth. He suffered, also, while in the service from exposure to cold and rain and from falling over a bank.

After discharge from the Army, he lived with his sister in Pittsburgh, and while there, he suffered some from his tooth; he was dizzy, weak in the legs and his left foot dragged, due to lack of muscular control; he also had bleeding from the nose.

From September, 1919 to May, 1926, he was employed by the West Penn Power Company, first as a laborer, and afterwards as a foreman of construction, doing supervisory work. He drove a car. During this period, he lost considerable time, as much as two days a week, by reason of his back, nervousness, nose bleeding, loss of sleep and dizziness. While he was a foreman, he was not required to do much physical labor. He suffered from headaches, dizziness, shortness of breath, pains in his leg, back and hemorrhages; and was re-quired to rest three or four times per day. From 1926 to January, 1927, he worked for the Duquesne Light Company, having supervision of a line gang; he worked all of this period excepting about ten days. From June 1, 1927 to May, 1928, he worked for the United Gas Improvement Company as a foreman. From May, 1928 to August, 1928, he worked for M. J. Daley & Company as an assistant foreman. From September, 1928 to April, 1932, he worked for the New York Central Railroad Company as a telegrapher. Starting in May, 1932, he worked about two months for the American-France Steamship Company as a wiper. He was paid by the New York Central Railroad for his service in 1929, $1,757.07; in 1930, $1,620.17; in 1931, $1,249.64; in 1932, $16.28—a total of $4,-643.16. He has not done any work since his employment with American-France Steamship Company in 1932, on account of being unable to work.

During all of the employment, aforesaid, he had illness. He consulted physicians and was advised by them to go to a hospital.

From September, 1926 to March, 1927, he was under the care and treatment of Dr. Joseph C. Edgar. Dr. Edgar diagnosed his principal trouble during his treatment as a serious affection of the heart, accompanied with a high blood pressure. He testified that plaintiff, by reason thereof, was incapacitated for work; that it could not be told when plaintiff might fall over and have a cerebral hemorrhage. During his treatment, the doctor thought he probably might improve, but he did not, and he testified, positively, that from his examination and treatments in 1926 and 1927, he was of the opinion that his then total disability to work would continue until he died. He also testified that the plaintiff's work record did not affect his opinion as to his total disability to work.

In Lumbra v. United States, 290 U.S. 551, 560, 54 S.Ct. 272, 276, 78 L.Ed. 492, the Supreme Court, speaking by Mr. Justice Butler, said: "The mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life." See United States v. Spaulding, 293 U.S. 498, 504, 55 S.Ct. 273, 79 L.Ed. 617.

In Witmer v. United States, 96 F.2d 745, 747, the Circuit Court of Appeals for this

Circuit (the Third), held in a war risk insurance case, where the facts were somewhat similar, that the question of whether the plaintiff was totally and permanently disabled while his policy was in force, was a question of fact for the jury. In that case the policy was effective until November, 1920.

From August, 1920 to April, 1921, the insured worked 1,934 hours for a machine company. From July, 1921 to August, 1922, he worked in a garage. From August, 1922 until April, 1925, he did not work. In April, 1925, he was a machinist for the Oil Well Supply Company and held this job until August, 1930. From the latter date, he could not work and from August, 1929, to February, 1930, he did no work. In the opinion it is stated:

"This leaves open the question of whether or not his disability was total throughout the period from November, 1920, until the trial. Though a superficial consideration of the plaintiff's work record would make it seem inconsistent with the allegation of total disability at that time, this apparent inconsistency disappears when all of the circumstances surrounding the work record are considered. To restate some of these briefly, when he was working in the garage, he was kept on, not because he was able to do the work required of him, but out of sympathy for his condition. When he was working for the Oil Well Supply Company, his coemployees, taking pity on him because of his condition, did practically all of the strenuous work for him. They saw that he was 'working on his nerve,' and his pain was written on his face. 'Running through this work testimony is an inescapable expression of human sympathy * * *; of a sense of human obligation of the strong towards the weak.' * * *

"All of these hardships are directly attributable to the injuries received in the service of his country. They indicate that the plaintiff worked 'when really unable and, at the risk of endangering his health or life.' Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 276, 78 L.Ed. 492. He is therefore entitled to the benefits of his policy of war risk insurance, Lumbra v. United States, supra; United States v. Caldwell, 3 Cir., 69 F.2d 200, and the judgment is affirmed."

In United States v. Hill, 9 Cir., 99 F.2d 755, 756, the judgment of the District Court was affirmed which permitted a recovery by the plaintiff where it appeared that the insured (a nurse) had worked frequently for compensation. There was substantial evidence that she could not work without impairing her health at the time she worked. There was also in evidence, records of examinations by physicians employed by the Government, which indicated that the insured was not affected in the way she claimed to be. The court held that the sole question was "whether or not there is substantial evidence that she was totally and permanently disabled at the time her policy lapsed August 1, 1919."

In Sprow v. United States, 7 Cir., 99 F. 2d 38, 40, which was also a war risk insurance case, in which there was a considerable work record and evidence that the insured was not able to work, the District Court directed a verdict for the defendant. On appeal, this judgment was reversed. The Court stated: "The test is not whether the plaintiff followed a substantially gainful occupation but whether he was able to do so. * * * And the question before the court was not whether the plaintiff should recover but whether he had produced substantial evidence to be submitted to the jury."

In the present case, in addition to the evidence of the plaintiff of his physical condition while he worked; the kind of work that he could do; the help he was required to receive when doing light work; the rest which he was required to take; that he worked because there was a necessity for him to do so in order to support those dependent upon him and partly because he thought that his doctors were probably alarmists, there was also the evidence of other witnesses corroborating the evidence of the plaintiff; and in addition thereto, there was the positive and direct evidence of Dr. Edgar that he examined and treated the plaintiff from September, 1926 to March, 1927; that in his opinion, the plaintiff then had a bad heart condition and a high blood pressure, which totally incapacitated him for work; that a cerebral hemorrhage might occur at any time, and that in his opinion, this total incapacity for work would continue during his lifetime. It also appears, that since some time in 1932, the plaintiff has not been able to do any work.

I am, therefore, of the opinion that the question whether the plaintiff was totally and permanently disabled prior to October 18, 1928, was a question of fact for the jury and not a question of law for

the court, and that there was substantial evidence to submit to the jury on the question whether the plaintiff was totally and permanently disabled prior to October 18, 1928.

The request of the defendant for binding instructions, which was made at the trial, is therefore, refused. The motions of defendant for a new trial and for judgment non obstante veredicto are also refused.