## Diven v. North American Refractories Company

*Swirles L. Himes*, for plaintiff.
*Robert H. Henderson*, for defendant.

FETTERHOOF, P. J., June 19, 1947.—Warren Diven, an employe of the North American Refractories Company, defendant, brought this action in assumpsit to recover "premium wages at double time rates" for work performed for defendant, "on the seventh consecutive working day in the regularly scheduled work weeks" from October 1, 1942, to July 15, 1945.

Plaintiff in his statement of claim predicated his action on Executive Order No. 9240, signed by the President of the United States September 9, 1942, and amended under Executive Order No. 9248, September 17, 1942, effective October 1, 1942. Under paragraph one said order recites "that the following principles and regulations should apply for the duration of the war to the payment of premium and overtime wage compensation on all work relating to the prosecution of the war" and under section A, paragraph 1, as follows:

"Where because of emergency conditions an employee is required to work for seven consecutive days in any regularly scheduled work week a premium wage of double time compensation shall be paid for work on the seventh day."

Defendant filed an affidavit of defense raising questions of law and set forth the following reasons:

1. Executive Order No. 9240 is void and of no legal effect because it was issued by the President without any statutory authority therefor being granted by Congress.

2. The President was without constitutional authority to issue such order.

3. It constitutes an attempt by the President to usurp the legislative powers of Congress contrary to the limitations of the Constitution.

4. Executive Order No. 9240 does not create any civil rights in favor of employes and against employers.

5. The order itself provides the remedy for its enforcement and if a right in the employes is created by the order, such right may only be enforced by means set forth in the order or the statute, if any, which authorizes such order and no common-law remedy is available.

The right of plaintiff to maintain this action depends upon the interpretation of said Executive Order No. 9240, whether or not it is a valid order as applied to premium wages and if defendant as a matter of law is liable.

We are unable to find, nor has plaintiff apprised us of any statutory authority for Executive Order No. 9240. President Roosevelt signed the executive order September 9, 1942, to become effective October 1, 1942. Congress had not prior to these dates passed any law delegating to the President authority to require employers to pay premium compensation by way of double time for work on the seventh consecutive day worked in any regularly scheduled work week.

There being no statutory authority for the executive order, we must turn to the Constitution to see if such authority is granted therein.

At the time of the issuance of this order we were engaged in a war, the like of which was never known, and naturally by necessity, custom and for the preser-

vation of our Nation the President was given great powers. However, the framers of the Constitution were men of great foresight, jealous of the functions of the various branches of our Government, and desirous of certain delegated checks and balances not only in peacetime but if and when we were engaged in war.

The very first article of the Constitution of the United States U. S. C. A., p. 29, Constitution, sec. 1, provides:

"All legislative Powers herein granted shall be vested in a Congress of the United States which shall consist of a Senate and House of Representatives."

Section 8 of article I delegates to Congress certain powers, first of which is the power "to lay and collect taxes", etc. By clause 11 of section 8 Congress is empowered "to declare war, grant letters of marque and reprisal". Under clause 18 it is empowered "to make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers".

Article 2 of the Constitution is devoted to the duties, functions and powers of the executive branch of our Government. Section 1 provides "the executive power shall be vested in a President of the United States of America". Section 2, clause 1, of said article provides "the President shall be Commander in Chief of the Army and Navy of the United States".

The delegation of powers to Congress and the President as the legislative branch of our Government is clearly defined in the opinion of the Supreme Court of the United States in the case of Ex parte Quirin, 63 S. Ct. 2, 317 U. S. 1, 87 L. Ed. 1, wherein the court used the following language:

"The Constitution thus invests the President as Commander in Chief with the power to wage war which Congress has declared, and to carry into effect all laws passed by Congress for the conduct of war and for the government and regulation of the Armed Forces, and

all laws defining and punishing offenses against the law of nations, including those which pertain to the conduct of war."

In the case of U. S. v. City of Philadelphia, 56 F. Supp. 862, certiorari denied 325 U. S. 870, 89 L. Ed. 1989, the court clearly states the powers of Congress to wage war and determine what must be done, in the following language:

"The Constitution invests in Congress the power to prepare for and to wage war successfully and it is within the power of Congress to determine that which must be done to accomplish this purpose."

During the war the prices of food, rent and other necessities were regulated, but it was held the power to so regulate them was legislative in nature and such regulations could not have been made by the executive branch of our Government without Congress having taken prior legislative action. This was so recognized in the case of O'Neal v. U. S., 140 F. (2d) 908; Brown v. Wyatt Food Stores, 49 F. Supp. 538.

See also Brown v. Winter, 50 F. Supp. 804, wherein the court held: "Congress has tremendous power to enact drastic legislation to meet the emergency of war which would be wholly improper in peacetime, and under such 'war power' may regulate prices of food, rent and other necessities of life." (Syllabus)

The power to regulate the prices of food, rent and other necessities being exclusively within the war powers of Congress, just as logically it follows that Congress has the exclusive legislative power to require the payment of double time premium wages in the effective prosecution of the war.

Speaking of legislative power, in the case of Springer et al. v. Philippine Islands, 277 U. S. 189, 72 L. Ed. 485, 48 S. Ct. 480, Mr. Justice Sutherland speaking for the Supreme Court said (277 U. S. 202):

"Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce

them or appoint the agents charged with the duty of such enforcement."

Mr. Justice Holmes in the same case in a dissenting opinion stated (277 U. S. 210):

"To make a rule of conduct applicable to an individual who but for such action would be free from it is to legislate . . ."

In issuing Executive Order No. 9240 the President was exercising the function of Congress in legislating and thus made a rule for the future conduct of employes. Without such a rule employers would have been *free* from any liability for the payment of double time premium wages.

The President, by issuing Executive Order No. 9240, assumed an illegal usurpation of the powers of Congress and by so doing the order is void and of no legal effect.

This conclusion is clearly fortified by the opinion of the court in the case of Toledo, P. and W. R. R. v. Stover et al., 60 F. Supp. 587, wherein is stated:

"The executive department of our government cannot exceed the powers granted to it by the Constitution and the Congress, and if it does exercise a power not granted to it, or attempts to exercise a power in a manner not authorized by statutory enactment, such executive act is of no legal effect."

Counsel for plaintiff admitted in his oral argument that Executive Order No. 9240 to be valid must have statutory authority but contends such authority is given in the Stabilization Act of 1942, 50 U. S. C. App. §§961-971. It is to be noted that Executive Order No. 9240 was signed by the President September 9, 1942, to become effective October 1, 1942, and the Stabilization Act of 1942 did not become a law until October 2, 1942. The Stabilization Act having been passed one day after Executive Order No. 9240 became effective, it neither authorized or ratifies such order. This is

quite obvious when we examine said act. Section 1 thereof being as follows:

"In order to aid in the effective prosecution of the war, the President is authorized and directed on or before November 1, 1942, to issue a general order stabilizing prices, wages and salaries affecting the cost of living; and, except as otherwise provided in this Act, such stabilization shall so far as practicable be on the basis of the levels which existed on September 15, 1942": Stabilization Act. Tit. 50 U. S. C. Appendix 961.

If we adopt the views of plaintiff, we would have an anomalous situation wherein Congress on October 2, 1942, authorized and directed the President to issue an order September 9, 1942, stabilizing wages and prices on the basis of levels existing September 15, 1942, which was after the issuance of the order. The President then could not have such future facts upon which to base such order.

Congress in said act in dealing with payment of double time provided as follows: section $5(C)$, 50 U. S. C. Appendix 965.

"The President shall have power by regulation to limit or prohibit the payment of double time except when, because of emergency conditions, an employee is required to work for seven consecutive days in any regularly scheduled work week."

We agree with defendant that the power of the President was only to "limit or prohibit the payment of double time" but not authorized to require payment of double time wages for work on the seventh consecutive day worked in any regularly scheduled work week.

It cannot be denied that Congress has the right to empower the executive to issue administrative rules and regulations, but this must be done within the limitations as well set forth in 16 C. J. S. 512 as follows:

"The power conferred to make regulations for carrying a statute into effect must be exercised within the powers delegated, that is to say, must be confined

to details for regulating the mode of proceeding to carry into effect the law as it has been enacted, and it cannot be extended to amending or adding to the requirements of the statute itself."

For further authority see Nordberg v. U. S., 51 F.(2d) 271, and St. Louis Independent Packing Company v. Houston, etc., 215 Fed. 553 (C. C. A. 8) in which case the court stated:

"It is within the power of Congress to vest in executive officers the power to promulgate administrative rules, but this never is deemed to extend to the making of rules to subvert the statute."

Plaintiff contends that he has a civil right created by the executive order and is entitled to such legal remedy as is necessary to enforce the right. He cites as authority for his contention the case of U. S. v. Gilbertson et al., 111 F.(2d) 978, and points out that executive orders have been held to be equivalent to law, but in that case the executive order was extended by virtue of a statute. The court in its opinion stated:

"That the extensions of the restriction here involved were made by executive order pursuant to the statute of 1906 rather than directly by the statute we do not consider of any significance, since administrative regulations, properly made, have been held to be equivalent to law."

Being of the opinion that Executive Order No. 9240 was not authorized by the Stabilization Act, it is unnecessary to consider it further. However, the remedy provided in the act for the enforcement of violations is found in section 11 as follows:

"Any individual, corporation, partnership or association wilfully violating any provision of this Act or of any regulation promulgated thereunder shall upon conviction thereof be subject to a fine of not more than one thousand dollars or to imprisonment for not

more than one year or to both such fine and imprisonment."

The law is well settled that when a method is provided for the enforcement of any right or liability created thereby, the statutory remedy is exclusive and must be followed: Switchmen's Union of North America et al. v. National Mediation Board et al., 63 S. Ct. 95, 320 U. S. 297, 88 L. Ed. 61; Fleming v. Miller et al., 45 F. Supp. 1004, modified Walling v. Miller et al., 138 F.(2d) 629; Hassell et al. v. U. S., 34 F.(2d) 34, and U. S. v. Smelser, 87 F.(2d) 799.

Judge Nelson McVicar of the United States District Court, Western District of Pennsylvania, recently filed an opinion (April 10, 1947) in the case of Kasper and Young v. National Electric Products Corporation, 70 F. Supp. 927, to recover compensation for "the seventh consecutive day of work at rates double the regular rate from October 1, 1942, until August 21, 1946" under Executive Order No. 9240. This case is similar to the instant one and we think the law as enunciated by the court is authority here. The court held:

"There is no averment in the complaint that the compensation claimed is for work relating to the prosecution of the war. Consequently this action is not covered by said order" . . .

"As the work for which compensation is claimed is not within the provisions of the executive order aforesaid, it is not necessary to discuss said order. However, it may not be amiss to state that said executive order is not a law in itself, nor was it authorized by any law when it was adopted in 1942. The Act relied upon by plaintiffs, the Stabilization Act . . . was passed by Congress October 2, 1942."

"In Sweet v. B. F. Goodrich Co., D. C. N. D. Ohio E. D., 68 F. Supp. 782, which was an action to recover overtime pay in emergency under Executive Order No.

9240, as amended, the court sustained the defendant's motion that it did not have jurisdiction of the action stating: 'The District Court is one of limited jurisdiction which the Congress can grant or take away. Jurisdiction is never a question to be left to doubt. If the Congress grants it, it must operate by clear and unambiguous provisions. No grant of jurisdiction either directly or by delegation provides a form here for the violation of Executive Order No. 9240. 40 U. S. C. A. Section 326 note' . . .

"The plaintiffs are not entitled to the relief sought as the averments in their complaint failed to aver sufficient facts to bring this case within the provisions of Executive Order No. 9240, as amended. If the averments of fact brought the action under the provisions of said executive order, then this court is without jurisdiction, as said order is not a law, nor was it authorized by any law of the United States. For the reasons already stated, the other averments, as to jurisdiction, cannot be sustained."

Plaintiff here does not allege the work he performed was in "the prosecution of the war" and this fact alone would be fatal to his claim. However, for the additional reasons above set forth we conclude that plaintiff has no legal right to recover under Executive Order No. 9240 and judgment must therefore be entered for defendant in accordance with section 20 of the Practice Act of May 14, 1915, P. L. 483.

### Decree of the court

And now, June 19, 1947, upon due consideration of defendant's affidavit of defense raising questions of law and arguments of counsel, judgment is entered for defendant, North American Refractories Company against Warren Diven, plaintiff. To this decree plaintiff excepts and a bill of exception is sealed for him.